Points Decided.

(October 31, 1921.)

D. V. ARCHBOLD, MILT RUSSELL, J. D. CARR, FRANK SWAUGER, FLOYD SWAUGER and TOM TRADER, Respondents, v. W. K. HUNTINGTON, Sheriff of Custer County, Idaho, Appellant.

[201 Pac. 1041.]

OUSTER—ACTION UNDER C. S., SEC. 8684, NOT CRIMINAL—PLEADING— INTENT NEED NOT BE CORRUPT—OFFICER SERVING PAPERS—WHEN PROTECTED—NONFEASANCE IN OFFICE—WHAT CONSTITUTES—SEC- TION PROPERLY ENACTED.

1. Summary proceedings under C. S., sec. 8684, are not criminal proceedings, and are not intended as a punishment for crime, and while such proceedings in some respects resemble a criminal action, they are only *quasi* criminal, and negative the idea of their being criminal.

2. Where the acts complained of affect a number of individuals in the same manner, they may all join in the information; and the nonfeasance complained of may consist of one or more acts stated in one cause of action, although each several act relied upon should be stated as a distinct and independent division, so that it may be answered or demurred to without confusion.

3. It is not necessary in a prosecution under this section to show that the officer acted with an evil or corrupt intent or motive, but it is sufficient if it appears that the act done or omitted was done intentionally, designedly, without lawful excuse, and therefore was not accidentally done.

4. Where the proceedings to establish a quarantine district were so improperly taken and irregular that no district was in fact established, and therefore the charge upon which ap- pellant arrested complainants and placed them in jail for vio- lating such regulation was void, the warrant of arrest, if regular on its face, will protect such officer in its due execution, in so far as he complied with its requirements, but will not protect him if he violates its command.

5. The fact that appellant and the health officer under whose direction he was acting honestly believed that such officer had au-

Publisher's Note.

5. On intentional disregard of law without corrupt intent as ground for removal of officer, see notes in Ann. Cas. 1913B, 400; 31 L. R. A., N. S., 566.

thority superior to orders emanating from the courts is not a justification for his refusal to obey the court's orders, and his placing complainants in jail under the pretense of placing them in quarantine as directed by the health officer, instead of taking them before the court that issued the warrant, *held* to constitute a wilful and intentional neglect to perform an official duty pertaining to his office, under C. S., sec. 8684.

6. The constitutionality of C. S., sec. 8684, cannot be challenged on the ground that it was never enacted as a separate bill, where such provision was incorporated into the Revised Statutes of 1887 by the code commission and adopted by the territorial legislature, and continued in force by art. 21, sec. 2, of the state constitution.

7. Art. 3, sec. 15, which provides that no law shall be passed except by bill, and sec. 16, which requires that every act shall embrace but one subject, has no application to laws passed by the territorial legislature, which were continued in force by the constitution.

APPEAL from the District Court of the Sixth Judicial District, for Custer County. Hon. Robert M. Terrell, Judge.

Action to oust defendant from office of sheriff. From verdict and judgment of ouster, defendant appeals. *Affirmed.*

E. W. Whitcomb and Holden & Holden, for Appellant.

If the different acts alleged constituted but one offense, the same should have been alleged under different counts. (*Territory v. Guthrie,* 2 Ida. 432, 17 Pac. 39; *State v. Gruber,* 19 Ida. 692, 115 Pac. 1.)

If a public official in attempting to perform his duties fails to act according to every specific requirement of the law or acts in a manner contrary to law, he would not be guilty of failure to perform official duties pertaining to his office, although he might be guilty of corruption in office and punishable under other sections of the statute. (*Corker v. Pence,* 12 Ida. 152, 85 Pac. 388; *Siebe v. Superior Court,* 114 Cal. 551, 46 Pac. 456; *In re Stow,* 98 Cal. 587, 33 Pac. 490; *Corker v. Cowen,* 30 Ida. 213, 164 Pac. 85.)

Proof must be made that the defendant wilfully, knowingly and intentionally refused and neglected to perform official duties pertaining to his office. In other words, that he corruptly refused and neglected so to do. (*Triplett v. Munter,* 50 Cal. 644; *Smith v. Ling,* 68 Cal. 324, 9 Pac. 171; *Rankin v. Jauman,* 4 Ida. 394, 39 Pac. 1111; *Ponting v. Isaman,* 7 Ida. 581, 65 Pac. 434; *Smith v. Ellis,* 7 Ida. 196, 61 Pac. 695; *Corker v. Pence, supra; Daugherty v. Nagel,* 28 Ida. 302, 154 Pac. 375.)

This is a *quasi*-criminal prosecution and every allegation of the complaint is strictly construed in favor of the accused. The presumptions are all in favor of the innocent intentions of the appellant. (*McRoberts v. Hoar,* 28 Ida. 163, 152 Pac. 1046; *Collman v. Wanamaker,* 27 Ida. 342, 149 Pac. 292; *Gorman v. County Commissioners,* 1 Ida. 553, 559, par. 6; *In re Stow, supra.*)

No proof of any "wilful" act on the part of the defendant was shown by any of the testimony given. (*State ex rel. Barker v. Meek,* 148 Iowa, 671, Ann. Cas. 1912C, 1075, and note, 127 N. W. 1023, 31 L. R. A., N. S., 566.)

Section 8684, C. S., is unconstitutional, as no such law was ever adopted or passed by the legislature in the manner required by the constitution. (*Daugherty v. Nagel, supra; Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575; *Lewis v. Dunne,* 134 Cal. 291, 86 Am. St. 257, 66 Pac. 478, 55 L. R. A. 833, note.)

Clark & Brodhead, D. E. Rathbun and George L. Ambrose, for Respondents.

"An officer arresting one under a warrant commanding him to arrest him and bring him forthwith before the subscribing justice must take him before the justice as commanded." (*Wright v. Templeton,* 80 Vt. 358, 130 Am. St. 990, 67 Atl. 817; *Tubbs v. Tukey,* 3 Cush. (Mass.) 438, 50 Am. Dec. 744; 4 Cent. Dig., Arrest, sec. 172, and cases cited thereunder; *Judson v. Reardon,* 16 Minn. 431, 3 Am. Dig., 2d Dec., sec. 70, Arrest, and cases cited; *Hill v. Smith,*

107 Va. 848, 59 S. E. 475; *Cary v. State,* 76 Ala. 78, cited
under sec. 848, Cal. Pen. Code; *Ex parte Bull,* 42 Cal. 196,
cited under sec. 825, Cal. Pen. Code, corresponding to
sec. 8720, Ida. C. S.; *In re Henry,* 29 How. Pr. (N. Y.)
185; *Gibson v. Holmes,* 78 Vt. 110, 62 Atl. 11, 4 L. R. A.,
N. S., 451.)

LEE, J.—This was a summary proceeding commenced
by respondents, complainants below, citizens of Custer
county, Idaho, for the removal of appellant W. K. Hunting-
ton from the office of sheriff of said county, under the pro-
visions of C. S., sec. 8684, and to recover the statutory pen-
alty therein prescribed.

The amended complaint alleges that W. K. Huntington
was the duly elected, qualified and acting sheriff of said
county, and that while so acting he arrested complainants
upon a warrant of arrest issued by the probate court of said
county and took them to Challis, the county seat, and im-
mediately lodged them in the county jail, where he kept
them from about 3 o'clock in the afternoon of November 5,
1918, until 11 o'clock of the following day; that he denied
their request to be taken before said probate court or any
magistrate, as required by C. S., secs. 8919 and 8920, and
refused to permit them to consult with their attorney, or
to give them an opportunity to be informed of the charge
against them, or to give bail for their appearance; and that
they were responsible persons and citizens of said county,
and were able and willing to give bail for their appearance
before any court at any time or place that might be required.

The information further charges that thereafter appellant
refused to obey a writ of *habeas corpus* issued by the judge
of the sixth judicial district, which commanded the said
sheriff to immediately release said complainants, and that at
a later date he attended upon a public highway an unlawful
assembly that had congregated for the purpose of delaying
and stopping the judge of said court and other officials,
including a representative of the United States Department

of Justice, and failed, neglected and refused to disperse the said assembly, after having been directed so to do by the said judge.

To this information appellant demurred generally, and specially upon the grounds that several causes of action had been improperly united, that the information was barred by C. S., secs. 8670 and 8671, and that it was ambiguous, unintelligible and uncertain in numerous particulars pointed out, and he also moved for a separation of the several causes of action. The demurrer and motion were overruled as to the first, second, third and fifth grounds, and sustained as to the others, the court holding that there was not a misjoinder of parties or causes of action, that it was not barred by C. S., secs. 8670 and 8671, and that the information stated a cause of action, and also denied the motion for segregation.

Appellant then answered in confession and avoidance, admitting the arrest of complainants and that he had placed them in jail, but pleaded by way of justification that there was at this time a quarantine regulation, established by the county board of health, which prohibited all persons from entering or passing through any portion of said county within the designated quarantine district, and that said arrest and detention was by virtue of a warrant placed in his hands for execution, issued upon an information filed in said court, charging a violation of said quarantine regulation.

Upon trial had before the court, it found against appellant upon the charge relating to the arrest and detention of the complainants, and for him upon the charges relating to his refusal to obey the writ of *habeas corpus* and to disperse the unlawful assembly. Conclusions of law were that appellant should be deprived of his office as sheriff of said county, and that informants should have judgment against him for the sum of $500 and the costs of this action. Judgment to this effect was entered therein as of January 11, 1919,

two days before the expiration of appellant's term of office. From this judgment he appeals.

It will not be necessary to consider *seriatim* each of the several specifications of error relied upon by appellant for a reversal of this judgment. They relate to errors of the trial court in overruling appellant's demurrer, to denying his motion to segregate the several causes of action, in finding that all of the wrongful acts had been done wilfully, knowingly and intentionally, in removing him from office and entering judgment in favor of informants in the sum of $500 and costs, to certain alleged errors in admitting opinion evidence, in striking from the record all evidence pertaining to the minutes of the Custer County board of health relating to the quarantine regulation, and to the refusal of appellant's offer to prove the establishment of a quarantine by the said board of health; and appellant challenges the validity of C. S., sec. 8684, under which these proceedings were had.

Proceedings under this section are in the nature of *quo warranto* proceedings, and are *quasi* criminal. (*Daugherty v. Nagel,* 27 Ida. 511, 149 Pac. 729.) That is, a proceeding under this statute in some respects resembles a criminal action, but being only *quasi* criminal negatives the idea of identity. (Bouvier's Law Dictionary, 2780.) They are not criminal proceedings, and are not intended as a punishment for crime. (*Rankin v. Jauman,* 4 Ida. 53, 36 Pac. 502; *Hays v. Simmons,* 6 Ida. 651, 59 Pac. 182.) Therefore, the provisions of C. S., sec. 8829, which require that an indictment or information shall charge but one offense, which may be set forth in different forms under different counts, do not relate to a proceeding for the removal of a public officer under this statute, and *Territory v. Guthrie,* 2 Ida. 432, 17 Pac. 39, and *State v. Gruber,* 19 Ida. 692, 115 Pac. 1, relied upon by appellant in support of his contention, have no application to an information of this kind.

The information charges that appellant refused and neglected to perform his official duty with respect to three

distinct and separate acts: First, that he placed informants in the Custer county jail without taking them before the probate court that issued the warrant, or any other, and refused to allow them an opportunity to give bail or to see their attorney; secondly, that he refused to release them upon a writ of *habeas corpus* issued by the district court; and, thirdly, that he neglected and refused to disperse an unlawful assembly. Appellant complains of this, and claims that it is a commingling of several causes of action. These three distinct acts complained of might have been stated as separate causes of action, but an information under this statute does not require that each several act complained of be stated as a separate cause of action, provided that each is stated in a distinct and independent division, so that it can be answered or demurred to without confusion. (Pomeroy's Code Remedies, 4th ed., sec. 336.) In this case the several acts are stated in separate paragraphs. Nor is it necessary, where the acts complained of affect a number of individuals in the same manner, that they must each severally file a separate information. Appellant cannot be prejudiced by a single judgment of ouster and penalty of $500 prescribed by the statute because the several complainants joined in said action and recovered a single judgment. The trial court found for the defendant upon the second and third accusations of the complaint, inaccurately termed "counts" in the findings, so that these charges were in effect surplusage.

The statute specifies two grounds for the removal of a public officer: First, where he is guilty of charging and collecting illegal fees for services rendered or to be rendered in his office; secondly, where he has refused or neglected to perform official duties pertaining to his office. (*Corker v. Pence*, 12 Ida. 152, 85 Pac. 388; *McRoberts v. Hoar*, 28 Ida. 163, 152 Pac. 1046.) The information should state the specific acts of omission or commission for which such removal is sought, with clearness and certainty. (*Smith v. Ellis*, 7 Ida. 196, 61 Pac. 695.)

Appellant contends that before he could be ousted and penalized as provided by this statute, it must be shown that he wilfully, knowingly and intentionally failed to perform an official duty; that is, that he corruptly refused to perform such duty. This provision of our statute was taken from the California code by the code commission of 1887, being R. S., sec. 7459, and the courts of this state have uniformly held, following the decisions of that court, that the refusal or neglect to perform an official act must be done knowingly, wilfully and intentionally, but that this statute should be distinguished from the proceedings authorized under C. S., sec. 8670, which applies to cases of misfeasance in office, as distinguished from nonfeasance, which is intended to be denounced by the section under consideration. Accusations under C. S., sec. 8670, must be commenced by the prosecuting attorney or by an indictment found by a grand jury, while accusations under this section may be commenced by any informant. (*Daugherty v. Nagel, supra; Corker v. Cowen*, 30 Ida. 213, 164 Pac. 85.)

It is not necessary, however, as appellant contends, for the complainants, in an action charging an officer with refusing and neglecting to perform an official duty, to show an evil or corrupt motive. Wilfully, as used in this information, is used in the same sense in which it is defined in C. S., sec. 8074, subd. 1; that is, when applied to the intent with which an act is done or omitted, it implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, in the sense of having an evil or corrupt motive or intent. It does imply a conscious wrong, and may be distinguished from an act maliciously or corruptly done in that it does not necessarily imply an evil mind, but is more nearly synonymous with "intentionally," "designedly," "without lawful excuse," and therefore not accidental. (Bouvier's Law Dictionary, 3454; *Miller v. State*, 9 Okl. Cr. 55, 130 Pac. 813.) When this information is construed in this sense, we think the evidence fully supports the findings of the court.

Without attempting to review all of the evidence, it appears that two of the county commissioners, one being a physician, and he with the other members having at some former time designated himself as county health officer, made some effort or took some steps toward establishing a quarantine district, to prevent the introduction of a communicable disease known as Spanish influenza, and thereby attempted to prohibit all persons from entering such quarantine district, unless first detained in quarantine for such time as said health officer should determine was necessary.

We do not understand that counsel for appellant contend that the proceedings taken were sufficient to establish a quarantine district. At any rate, it is clear from the record that a quarantine district was not established. The complaint upon which the warrant of arrest was issued charged respondents with the crime of having wilfully violated quarantine regulations, and the warrant issued thereon commanded appellant to forthwith arrest respondents and bring them before the probate court that issued the same, or before some other magistrate. This warrant of arrest was regular in form, and issued by a court of competent jurisdiction, and was sufficient to protect appellant in its due execution, if he had complied with its requirements. He arrested complainants with sufficient promptness, but according to his own testimony, as well as his return to the warrant, he failed and neglected to take them before the said probate court or any magistrate, as the writ commanded him to do. On direct examination he testified:

"Q. And was it the county jail you put them in? A. It was. Q. What reason had you for putting them in the county jail rather than any other place? A. No other place for them. Q. What was your purpose when you arrested these men? (After objection and ruling.) A. Well, I put them there to hold them until their quarantine period was up, because Sunday afternoon Dr. Kirtley came

out of town six miles where I was and said a bunch had run the quarantine—''

Again, counsel asked:

''Q. How did you happen to liberate them, what was the reason for their liberation? A. They asked me how long they would have to stay, and I told them they would have to stay there between three and four days—that was my understanding from the doctor—from the time they went through the quarantine line, and I left it to them to virtually figure up the time they went in, and they told me, and I counted it up, and I said, 'Well, it would be some time to-morrow.' Q. Well, explain the circumstances of their liberation. What was the cause of your liberating them? A. The doctor turned them loose—out of quarantine. He said they could go.''

In his return to the warrant of arrest, after naming the complainants, he states that he ''placed the above named in quarantine this fifth day of December, 1918.''

In his answer, he alleges with reference to his action under this warrant of arrest that the informants attempted to violate such quarantine regulations, as did also the judge of the district court, by attempting to enter the said quarantine district without submitting themselves to the requirements and rules of said county board of health; that the said county board of health at a meeting lawfully called prior to the commission of any of the acts set forth and described in the amended information, had duly determined upon said quarantine, had adopted rules and regulations of the state board of health, and had otherwise fully met the requirements of the law as provided in chapter 140 of the Session Laws of 1913, state of Idaho; that the acts of this defendant were in all respects in accordance with the requirements of said law as carried out by the said county board of health of said county of Custer; and that the said informants were placed in the county jail of said county of Custer for a certain length of time for the reason that there was no other suitable place in Challis or within

the said quarantine district within which they could be suitably and properly confined until it should first be ascertained whether they were afflicted with said contagious and infectious disease, all of which said acts were done in conformity to the rules and regulations of said county board of health of said county of Custer; and that in no respect has this defendant violated any of the laws of the state, or failed, refused and neglected to perform his duties as the sheriff of said county of Custer, within any of the times set forth and described in said amended information, or otherwise; that at all times mentioned in said amended information, and while said informants were in the care and custody of this defendant, he endeavored to meet their requests and wants with reference to their having communication with their attorney as far as possible without violating any of the provisions and regulations of said established quarantine, and was ever willing to take said informants before the probate court of said county of Custer and to permit said informants to go wherever they pleased, *after being detained and quarantined the length of time required by the rules and regulations made by said county board of health,* and established in said county of Custer.

The complainant Swauger testified, and his testimony is not controverted, in answer to the questions as follows:

"Q. Please detail any conversation you had with the sheriff at that time, either you had yourself or other members of the party had with the sheriff in your presence and hearing. A. Yes, sir; I asked Mr. Huntington, I says, 'We would like to talk to our attorneys.' He says, 'You can't talk to nobody.' Then I says, 'Huntington, I demand we be taken before a judge.' He says, 'You will be taken no place. You will be taken to jail. You will be taken to the jail.' That is the words he used, 'You will be taken to jail.' Q. State whether or not in that conversation, Mr. Swauger, there was reference, either by yourself or any other member of the party, or by the sheriff, with reference to bail? A. I asked him for bail, too, for the whole

bunch. When I got out of the car, I says, 'Mr. Huntington, can we give bail?' He says, 'No, sir.' I asked him, I says, 'can we be taken before the judge?' He says, 'No, sir.' I demanded that we be taken, and he says, 'No, sir,' and then I asked him if we could talk to Chase Clark, and he says, 'No, sir; you can't talk to nobody, you will be taken to jail.' "

It is therefore apparent that appellant failed and neglected to obey the directions contained in the warrant, which commanded him to forthwith arrest the complainants and bring them before the probate court at his office in Challis, or in case of the absence or inability of said court to act, then to take them before the nearest and most accessible magistrate. It may be that appellant and Dr. Kirtley, the county health board officer, acted under a mistaken notion that it was within their authority to arrest and place in jail all persons who entered this pretended quarantine district, but however this may be, it cannot be urged even as an extenuating circumstance, much less as a defense, on behalf of appellant. He was a court officer of long experience, and had taken complainants into custody by virtue of a warrant issued by a court of competent jurisdiction, commanding him to take said complainants *forthwith* before such court. They demanded that this be done, and he contumaciously refused to obey the order of the court, but acting either upon his own volition or upon the direction of the said health officer, placed these parties in jail for what he or the health officer determined was the proper quarantine period for which they should be held, and it appears from the record that the district judge, a federal official and other court officers, whose official duties required them to go into this so-called quarantine district, narrowly escaped being placed in jail by appellant, acting at the behest of this health officer. Manifestly, ministerial officers cannot usurp the functions of courts in this manner, and escape the consequences of their wrongful acts. Appellant's placing the complainants in jail without taking them before the court

or a magistrate was a wilful and intentional neglect to perform an official duty pertaining to his office, for which he should be ousted therefrom and penalized as provided by said statute.

The last assignment relied upon by appellant charges that this section of the statute is unconstitutional, on the ground that it was never adopted or passed by the legislature in the manner required by the constitution, that is, by bill introduced in the legislature, and he cites in support of his contention, among other cases, those of *Lewis v. Dunne,* 134 Cal. 291, 86 Am. St. 257, 66 Pac. 478, 55 L. R. A. 833, and note; *Daugherty v. Nagel, supra; Libby v. Pelham,* 30 Ida. 614, 166 Pac. 575; and article 3, sec. 16 of the constitution. Appellant challenges the constitutionality of this statute on the ground that it was incorporated into the revision known as the Revised Statutes of 1887 by the code commission, and claims that it was never lawfully enacted by the legislature. The question of whether or not a complete revision and compilation of all or any considerable portion of the statute law of a state can be lawfully enacted by the adoption of a complete revision, under the limitations in this provision of the constitution cited, is not before us for determination. California, in the well-considered case of *Lewis v. Dunne, supra,* holds that a constitutional provision providing that every act shall embrace but one subject, which subject shall be expressed in the title, is an inhibition against the adoption of an entire code as a single bill, and the great weight of authority in the states having a similar provision in their organic law supports this view. But this provision was placed in the revision of 1887 by the code commission, and adopted by the territorial legislature when its power to enact laws was not restricted by any limitation other than that placed upon it by the Congress and federal constitution, and all laws that were in force at the time of the adoption of our constitution, and which were not repugnant thereto, were continued in force by that instrument, until they expired by their own limi-

tation or were altered or repealed by the legislature. (Article 21, sec. 2.) Therefore, the constitutional limitation found in article 3, secs. 15 and 16, providing that no law shall embrace more than one subject, which subject shall be embraced in the title, has no application to the manner in which C. S., sec. 8684, became a part of our statute law.

We find no error in the record, and the judgment of the court below is affirmed, with costs to respondents.

Rice, C. J., and Dunn, J., concur.

BUDGE, J., Dissenting.—The appellant at and prior to the date upon which the charges herein were filed was the duly elected, qualified and acting sheriff of Custer county. A quarantine had been established in a portion of the county, radiating out from Challis, the county seat, for the purpose of preventing persons living without the boundaries of the district designated from coming therein, and thereby preventing the introduction of Spanish influenza into that locality. From the record it clearly appears that the people, particularly in and about Challis, were panic stricken, even to the extent that they barricaded themselves against officers of the federal and state government entering the town. Their wire entanglements quite equaled, if they did not surpass, those constructed by the powers opposed to the allies during the great war. While this condition was at its height, respondents entered the restricted district, and a warrant was placed in the hands of appellant, as sheriff, to apprehend them.

There is no question raised here involving the regularity or validity of the warrant, or its proper service, but the sole question is whether the facts disclosed constitute nonfeasance in office, or a refusal or neglect on the part of appellant to perform the official duties pertaining to his office, within the provisions of C. S., sec. 8684.

Dismissing all consideration—as should properly be done—of all charges contained in the information which were found by the trial court not to be sustained by the evidence, and

directing our attention only to the charges which were sustained and set out in the findings of fact, the record shows the court found that on November 5, 1918, the appellant arrested the respondents at or near Clayton, Custer county, pursuant to a warrant issued out of the probate court, and conducted them to Challis, arriving there about 3 o'clock P. M., and immediately lodged them in the county jail; that he failed and refused to take them before the probate judge before locking them up in the county jail; that they demanded of appellant that he permit them to consult counsel; that he take them before the probate court or judge, and give them an opportunity to give bail, all of which he refused to do, and refused and neglected to take them before any other magistrate; and that all of the said acts were done knowingly, wilfully and intentionally.

Upon the foregoing facts, the court found as conclusions of law, that the defendant refused and neglected to perform the official duties pertaining to his office as sheriff; that he should be deprived of his office as sheriff; and that the said informers have judgment against him for $500 and costs of suit.

C. S., sec. 8720, provides that: "The defendant must in all cases be taken before the magistrate without unnecessary delay and any attorney at law entitled to practice in courts of record of the state of Idaho may, at the request of the prisoner, after such arrest, visit the person so arrested."

The respondents were taken before the magistrate who issued the warrant, but it is insisted that they were not taken before such magistrate "without unnecessary delay," and that the appellant is, therefore, subject to removal from office, under the provisions of C. S., sec. 8684, for having refused or neglected to perform official duties pertaining to his office.

With this position I am not in accord, for the reason that appellant, as shown by the record, took the respondents before the officer who issued the warrant. A refusal or

neglect to perform an official duty is a nonfeasance. Misfeasance is a default in not doing a lawful act in a proper manner, omitting to do it as it should be done; while malfeasance is the doing of an act wholly wrongful and unlawful. (*Coite v. Lynes,* 33 Conn. 109.)

If appellant had not taken respondents before the magistrate, he would have been guilty of a failure to perform an official duty pertaining to his office. The fact that he did not proceed "without unnecessary delay" may have constituted misfeasance or malfeasance, depending upon the particular facts which should be submitted to and ultimately found by a jury, in that he did not do a lawful act in a proper manner, or in wrongfully and unlawfully confining the informers in the county jail instead of taking them without unnecessary delay before a committing magistrate.

We think the oldest and one of the leading cases in point upon this question, and most frequently cited, is the case of *People ex rel. v. Burnside,* 3 Lans. (N. Y.) 74.

In that case certain commissioners were removed from office upon the ground that they had wilfully neglected or refused to perform their duties in selling and disposing of stock held by the town, on credit, although they had disposed of the stock. In construing the provisions of chap. 384 of the Laws of New York of 1859, section 5, which reads as follows: "In case any commissioner under the said act, . . . . , shall refuse or wilfully neglect to perform any part of the duties specified therein, or required by this act, his office shall thereupon become vacant; and upon proof of the fact, to the satisfaction of the county judge of the county wherein such commissioner shall reside, he shall appoint some other person to fill his place, in the manner now provided by law," the court said:

"The wilful neglect and refusal upon which the order was based was, that the commissioners had done an act in violation of their duty, and had been guilty of misfeasance in office, and was not upon the ground of a refusal to perform, or a wilful nonfeasance. . . . . In order to make out a case

within the provisions of the section cited, there must be an absolute refusal or a wilful neglect to perform some duty imposed by the act. The statute evidently was not intended to punish the commissioners for positive acts done by them in violation of law, but for contumacy, in refusing to obey the mandate of the law, and for wilfully and unlawfully neglecting to do what was required by the plain terms and import of the statute.''

In the course of the opinion, the court also says:

''This provision is highly penal in its character, and inflicts a severe penalty upon the delinquent who has violated its requirements. The jurisdiction conferred is limited and special, and the proceeding for the enforcement of the act is of the most summary and rigorous character. The rule is well established, that penal statutes, in declaring what acts shall constitute an offense, and in prescribing the punishment to be inflicted, are to be construed with strictness and rigor.''

In the case of *State v. Alcorn,* 78 Tex. 387, 14 S. W. 663, that court, in discussing a statute providing for the removal of officers, says:

''The statute under consideration is one penal in character, and must be construed as though it were one defining a crime and prescribing its punishment.

''If the respondent violated his official duty, whether this resulted from wilful act or not, he would be responsible to any person injured thereby, for intent with which his act or refusal to act was accompanied would not be an inquiry; but when it is sought to remove him from office on account of official misconduct *animus* becomes an important inquiry.'' (78 Tex. 393, 14 S. W. 665.)

As was said by the Michigan court in *People ex rel. Metevier v. Therrien,* 80 Mich. 187, at 195, 196, 45 N. W. 78, 80:

''The right to hold this office is just as sacred in the eyes of the law to Metevier as the right to hold the property he has earned. It is a property right, and one of which he can only be divested by a strict conformity to the statute. . . . .

"The people of Mackinac county have rights also, as well as the accused. They have the right, under the constitution, to elect their county officers, and to have such officers serve out the terms for which they were elected. It was not contemplated by the constitution that such officers should be removed but for grave reasons."

We do not wish to be understood as holding that the right to hold a public office is a property right. That question is not here for decision.

The very object of this statute is to rid the community of corrupt, incapable or unworthy officials. There is no suggestion that appellant is not in every way competent to fill the office. So far as this case reveals, his personal character and standing in the community are unimpeached. To say that such an officer is to be removed in disgrace from the office to which he has been elected by the county—conceding that he was guilty of malfeasance or misfeasance in office, for which he is responsible in damages—upon the theory that he is guilty of nonfeasance, is to sanction a shocking misinterpretation and misconstruction of the statute, and is a determination of questions of fact which the court could not rightfully withdraw from the jury. For a clear and concise statement of the principles of law, as hereinabove briefly set forth, I invite attention to the case of *State ex rel. Barker v. Meek*, 148 Iowa, 671, Ann. Cas. 1912C, 1075, 127 N. W. 1023, 31 L. R. A., N. S., 566, and note.

The rights of society will not be adequately protected and the will of the people will be defeated if every executive officer in this state is to be removed at the instigation of an informer and penalized in the sum of $500, for failure to take a person arrested immediately before a magistrate, where the arrest is made in a lawful manner and upon a warrant regular upon its face, no matter what the circumstances might be, or the condition of the party arrested, upon the theory that such officer is guilty of nonfeasance, and without an opportunity to show that he acted without malice, or in good faith and with an honest intention to

perform the duties of his office according to his understanding of his authority under the law.

In the case of *State v. Waller,* 7 N. C. 229, it was held that a person may be arrested for drunkenness, upon view, when it is a public nuisance. The question occurs: What is the officer to do with the offender when he shall have been arrested without a warrant? All authorities agree that he should be carried as soon as conveniently may be before some justice of the peace, and if he is arrested at a time and under such circumstances that he cannot be carried immediately before a justice, the officer may commit him to jail or lock him up, according to the nature of the offense and the necessity of the case.

In the case of *State v. Stalcup,* 24 N. C. 50, it is held that the officer was the judge of the necessity, but if he be guilty of a gross abuse of his authority and do not act honestly, according to his sense of right, but under pretext of duty is gratifying his malice, he is liable to indictment. The jury must judge of his motive from the facts submitted to them. (*State v. Freeman,* 86 N. C. 683.)

It was held in *Keefe v. Hart,* 213 Mass. 476, Ann. Cas. 1914A, 716, 100 N. E. 558, that it is the duty of a policeman, arresting one without warrant, to take him before the magistrate as soon as reasonably possible, that the magistrate may determine whether there is ground to hold the prisoner, and that it cannot be determined as a matter of law that a delay of an hour and a half, by officers arresting without a warrant, in taking the prisoner before a magistrate, was reasonable, since such delay might have been beyond the time of adjournment of the magistrate's court, and involved a further delay; the question becoming one of law only when the facts are agreed.

As was said in the case of *State v. Meek, supra:* " . . . . if a county treasurer is to be conclusively held guilty of a wilful violation of duty subjecting him to a removal from office for every voluntary act or omission for which we may find no warrant in the statute, no matter how clear his

honesty of purpose or how manifest his competency for the position, or how perfectly the public is protected against injury or loss . . . . then there is no place or point to draw the line in the administration of any office short of absolutely perfect observance of the statute, not merely as it apparently reads, but as the court in its wisdom, or lack of it, construes it to read. . . . . That such technical violations, against which an ordinary civil action in damages affords a complete remedy, should be classed as impeachable offenses calling for the removal of an officer, is intolerable. . . . . Suppose the clerk to be so delayed by the pressure of other official work that his report is not filed until a day or two after that day is passed, is he guilty of wilful misconduct in office? The county auditor is required to make report of certain expenses to the clerk of the district court on October 15th of each year. Suppose that, acting in good faith, he fails to present his report until October 16th, and when he appears for that purpose the clerk says to him, 'I have not yet closed my books and accounts of yesterday's business, and will file your report as of that date,' and, this being done without any wrongful motive and in the belief that they could rightfully do so, are they both chargeable with wilful misconduct? Or if an assessor in the honest, but mistaken, belief that certain property is not taxable, omits it from his roll, is he therefore and as a matter of law subject to removal from his office?''

The statute should be reasonably construed and not arbitrarily. The right of vindication should never be denied, neither should a court assume the prerogatives of a jury. Malfeasance and misfeasance should not be confused with and held to be nonfeasance.

In the instant case, the appellant and the people generally within the bounds of the quarantine district were panic stricken. Hotels were not open for the reception of guests, nor could they find lodging or entertainment in private homes or at public resorts. Whether the actions of the

sheriff, in an action against him for false imprisonment, were such that as a matter of law he would be guilty, or that the conditions and circumstances existing at the time of the arrest of the respondents and their incarceration in the county jail would warrant a mitigation of damages, are questions which should have been properly submitted to the jury, in a proper action by the parties injured. We think this court should take judicial knowledge of the prevalence of the disease known as Spanish influenza, and the various proclamations and orders issued by federal, state and county health officials, and the fact that the courts of the state were adjourned from time to time, and churches and schools were closed, until the disease subsided.

Conceding that the sheriff and those associated with him acted unreasonably, and even admitting that his acts were wrongful and that he would be answerable in damages, he did not, under the facts disclosed in the record in this case, refuse or neglect to perform the official duties pertaining to his office, within the meaning of C. S., sec. 8684, and we are not called upon to decide whether he was subject to removal under the provisions of C. S., secs. 8670 and 8671.

There is no merit in the contention made that appellant should be removed under the provisions of sec. 8684, *supra,* upon the ground and for the reason that he failed and refused to allow respondents to consult counsel. The record shows that they did consult their counsel, and that a writ of *habeas corpus* was issued for their release, and it was the duty of the sheriff to obey the writ, for which he may have been subject to removal, and his failure to do so was reprehensible. But the trial court found in his favor, and this matter is not here for review, and should not influence this court in its ultimate conclusions, but should be disregarded in like manner with every other charge made which in the opinion of the trial court was not supported by the evidence and is not here for the purpose of review.

We agree in the statement made in the majority opinion to the effect that the conduct of the sheriff was not such as

should receive commendation at the hands of this or any other court, but we are not of the opinion that the judgment should be sustained.

McCarthy, J., concurs.