### JONES v. STATE.

No. 5389.

Court of Civil Appeals of Texas. Texarkana.

Sept. 25, 1937.

Rehearing Denied Sept. 30, 1937.

Claude A. Williams, of Longview, for appellant.

Oscar B. Jones, of Longview, for the State.

WILLIAMS, Justice.

Appellant, Troy C. Jones, defendant and respondent below, prosecutes this appeal from an order and decree of the 124th district court of Gregg county adjudging him guilty of official misconduct and incompetency in public office, removing him from the office of constable, precinct No. 3 of said county, and declaring the office vacant. This decree also continued in effect, pending an appeal, an order of the trial court as entered in this cause on May 5, 1937, temporarily suspending the appellant and respondent from office and appointing another to discharge the duties of such office for the time being and pending the final disposition of the case.

This suit was instituted and prosecuted under and pursuant to the provisions of title 100 of the Revised Civil Statutes of Texas (as amended [Vernon's Ann.Civ.St. art. 5961 et seq.]) relating to the removal of officers from public office. The petition contained 44 alleged causes for the removal of the defendant; each cause being separately presented and numbered.

The defendant, Jones, answered by general demurrer, special exceptions, plea of not guilty, and general denial.

The case was tried before a jury, and in accordance with the provisions of article 5978, R.S., by appropriate instructions and proper charge applicable to the facts of the case, the jury was instructed to find from the evidence which cause or causes, if any, they found were sustained by the evidence before them, and which were not sustained. Nineteen of the 28 causes for removal submitted by the court were definitely and separately found by the jury to have been sustained and found to be true in fact.

The construction to be placed upon the term "official misconduct," as that term is defined and used in articles 5970 and 5973, R.C.S. of Texas, is the controlling question in the disposition of this appeal. We do not deem it necessary to set out each of the alleged causes for removal which were sustained by the jury, and will only take notice of causes Nos. 30, 32, 34, 39, 40, and 41, sustained by the jury as being true, which we feel are ample for an intelligent discussion of this principal question.

Article 5970, title 100, R.C.S. of Texas, provides: [A] "constable * * * may be removed from office by the judge of the district court for incompetency, official misconduct or becoming intoxicated by drinking intoxicating liquor, as a beverage," etc.

Article 5973, title 100, R.C.S. of Texas, reads: "By 'official misconduct,' as used herein with reference to county officers, is meant any unlawful behavior in relation to the duties of his office, wilful in its character, of any officer intrusted in any manner with the administration of justice, or the execution of the laws; and includes any wilful or corrupt failure, refusal or neglect of an officer to perform any duty enjoined on him by law."

Plaintiff pleaded:

"That the defendant, Troy C. Jones, was, on or about the 21st day of January, A. D. 1937, by the Commissioner's Court of Gregg County, Texas, duly appointed Constable of Precinct Number 3. of Gregg County, Texas, and that pursuant to said appointment the said Troy C. Jones, took the oath of Office prescribed by law, executed a bond as required by law and became the duly qualified and acting Constable of Precinct #3 of Gregg County, Texas, which office he now holds:

"That during his present term in said office, the said Troy C. Jones, has been guilty of official misconduct and incompetency in office and of gross carelessness in the discharge of the duties of said office of Constable of Precinct #3, of Gregg County, Texas, and now is incompetent, and is guilty of gross carelessness in the discharge of the duties of Constable of Precinct #3 of Gregg County, Texas, for and by virtue of each and all of the matters and things herinafter alleged: * * *

"No. 30. That the defendant, Troy C. Jones, has been and is guilty of official misconduct and incompetency in the discharge of the duties of his office in the following ways, to-wit: On or about April 4th, 1937, one V. A. Mickey, a white man, and one Willie Johnson, a Negro, were talking in Gladewater and neither one was violating any law and the defendant, Troy C. Jones, suddenly stopped his car by the side of them, used profane language, cursed and abused both Willie Johnson and V. A. Mickey and unlawfully and without a warrant arrested the said Willie Johnson and took him to jail and kept the said Willie Johnson in jail practically all of one day without filing any charges of any kind or character and then turned the said Willie Johnson out of jail without ever any charges having been filed and in doing so the said Troy C. Jones was guilty of false imprisonment of Willie Johnson. On this occasion, the defendant, Troy C. Jones, cursed and abused Willie Johnson both while he was arresting him and after he got him in jail, and after a lawyer had come to see the said Willie Johnson, the said defendant told the said Willie Johnson that if he sent after a lawyer again, he the defendant was going to put his lawyer in jail with him. On said occasion the said defendant, Troy C. Jones, also threatened to kill the said Willie Johnson the defendant Troy C. Jones, acted maliciously without any provocation.

"No. 32. That the defendant, Troy C. Jones, has been and is guilty of official misconduct and incompetency in the discharge of the duties of his office, in this, to-wit: On or about the 10th day of March, 1937, the defendant Troy C. Jones, cursed and abused one Harry Lewis, Jr., without provocation and then committed an assault upon the said Harry Lewis, Jr., when the said

Harry Lewis, Jr. had not done anything to the said Troy C. Jones to justify the said conduct.

"No. 34. That the defendant, Troy C. Jones, has been and is guilty of official misconduct and incompetency in the discharge of the duties of his office in this, to-wit: On or about the 1st day of March, 1937, the defendant Troy C. Jones put in jail one Frank Massad, and having arrested him without a warrant, and the said Frank Massad had violated no law of the State of Texas, and placed him in jail and turned him out without ever having filed any charges against him and in doing so, the said Troy C. Jones was guilty of false arrest and false imprisonment.

"No. 39. That the defendant, Troy C. Jones, has been and is guilty of official misconduct and incompetency in the discharge of the duties of his office in this, to-wit: On a great many occasions, Troy C. Jones has said to whomever he left in charge of the jail, 'If anyone tries to get anyone out of jail, put them in jail.'

"No. 40. That the defendant, Troy C. Jones, has been and is guilty of official misconduct and incompetency in the discharge of the duties of his office in this, to-wit: The defendant, Troy C. Jones, has left instructions to whomever was in charge of the jail, 'If they want to plead guilty let them plead guilty, and if not let them stay there until they get ready to plead guilty.'

"No. 41. That the defendant, Troy C. Jones has been and is guilty of official misconduct and incompetency in the discharge of the duties of his office, in this, to-wit: That on or about the — day of March, A. D. 1937, the defendant, Troy C. Jones, went into a store known as the Western Auto Supply Associate Store in the City of Gladewater, Texas, run and operated by one Frank Welch and went into said place of business and inquired who was Welch and asked Mr. Frank Welch if he owned a Buick automobile that was out in front of said place of business, and the said Frank Welch advised him that he did own said automobile. The said Defendant then advised the said Frank Welch that he was going to have to arrest him and the said Frank Welch asked him why, and the said Troy C. Jones said for having improper licenses and the said Frank Welch asked him the said Troy C. Jones, what was improper about his licenses, and the Defendant then said to the said Frank Welch,

'God damn you, come out here and I will show you.' Then the said Defendant, and the said Frank Welch walked out to the automobile, which had an Arkansas license plate on the same and the said Frank Welch asked the said Troy C. Jones what was wrong with it and the said Defendant replied, 'God dammit, you have out-of-state licenses on it.' The said Defendant then told the said Frank Welch to come down to his office at 9:00 o'clock the next morning to see him about the matter, which the said Frank Welch did and the Defendant, not being present, he talked to B. M. Land, Justice of the Peace, which said Justice of the Peace advised him to go take out a Texas license. The said Frank Welch then went to the City Hall to do that and while at the City Hall, was arrested by a Deputy Constable of the Defendant's and taken down to the office of the Defendant. In a few minutes the said Defendant came down to his office and said to the said Frank Welch, 'God dammit, why didn't you come down like I told you?' The said Frank Welch advised the said Troy C. Jones that he had reported as he was told to do and the said Defendant then said, 'God dammit, put him in jail. I am the Constable around here and you had better show me a little respect.' Upon the said Defendant saying this, the said Frank Welch was locked up where he stayed for about two hours before being released."

Plaintiff further alleged: "That by reason of each and all of the foregoing allegations in this petition, the Defendant Troy C. Jones has been and is guilty of official misconduct and incompetency in the discharge of his duties as Constable of Precinct Number 3 of Gregg County, Texas."

Appellant does not attack the findings of the jury as not being supported by the evidence, but contends that these acts, if so, do not in law amount to official misconduct as contemplated by said articles of the R. C. S. of Texas, in that the testimony of plaintiff's witnesses proved that defendant was acting in a personal capacity and not in an official capacity in relation to the duties of his office as such constable. By general demurrer and special exceptions, appellant contends that the petition fails to allege acts of misconduct in relation to the duties of his office.

We refer back to the allegations in the several causes for removal in the petition

hereinbefore set out, and will now discuss said allegations to determine if these constitute official misconduct within the provisions of articles 5970 and 5973 of the Revised Civil Statutes of Texas.

■ The legal right of this constable, or any other county peace officer in Texas to make an arrest, is controlled by articles 212, 213, 215, and 217 of the Code Criminal Procedure of Texas. Articles 212, 213, and 215 provide that a peace officer or any other person may, without warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony, or an offense against the public peace; or if such an offense is committed in the presence or within the view of a magistrate, and such magistrate verbally orders the arrest of the offender; or where it is shown by satisfactory proof, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Article 217 provides that such officer making an arrest under any of the foregoing provisions shall immediately take the person arrested before the magistrate who may have ordered the arrest, or before the nearest magistrate where the arrest was made without an order.

Article 233 provides that an officer executing a warrant of arrest shall take the person whom he is directed to arrest forthwith before the magistrate who issued the warrant, or before the magistrate named in the warrant. Article 214 relates to certain powers of municipal authorities to pass ordinances relating to arrests, which is not applicable.

■ Cause No. 30 charges that the defendant, as constable of said precinct, arrested Willie Johnson in Gladewater, Tex.; that Johnson was not violating any law at the time of his arrest; that he was arrested without a warrant, incarcerated, and kept in jail without any charge being filed against him; and that no charges were ever filed against him. The allegations as to the arrest and confinement in jail of Massad by this respondent, contained in cause No. 34, as well as the allegations in cause No. 41 as to the imprisonment of Frank Welch, all show a total disregard by respondent of the provisions of the hereinbefore quoted provisions of the Code of

Criminal Procedure. And under the allegations as contained in causes Nos. 30, 34, and 41, these acts charge a violation of article 1169 of the Penal Code of Texas of 1925, defining "False Imprisonment," which reads, to wit: "False imprisonment is the wilful detention of another against his consent and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other means which restrains the party so detained from removing from one place to another as he may see proper."

In McBeath v. Campbell, 12 S.W.(2d) 118, an opinion by the Commission of Appeals adopted by the Supreme Court, the herein quoted provisions of the Code of Criminal Procedure, and article 1169 of the Penal Code, were under consideration in a suit against a sheriff and his bondsmen to recover on a statutory bond, "conditioned for the faithful performance of all the duties required of him by law." McBeath was arrested without a warrant of arrest and imprisoned in jail. None of the provisions under articles 212, 213, 215, 217, or 233, C.C.P., existed to authorize the arrest and imprisonment of McBeath. The court, in commenting upon the facts of that case, states: "The Bill of Rights, which is incorporated in the fundamental law of this state, guarantees to every citizen that he shall not be deprived of his life, liberty, or property except by due process of law. We hold that any arrest or imprisonment of any citizen of this state, no matter how poor or obscure, and no matter what may be his station in life, except as allowed or required by the laws of this state, is a violation of the Constitution of this state, and the courts of this state, when appealed to, will redress such wrong if it can be done in a lawful manner."

In Branch v. Guinn (Tex.Civ.App.) 242 S.W. 482, 484, Branch was arrested in the courthouse. He was not taken before the justice of the peace, but carried at once to the jail and confined there. This cause was a suit for damages for false imprisonment. The appeal involved the refusal of the trial court to give the following charge: "If the sheriff had a warrant and refused Branch an opportunity to make bond, and did not carry Branch before the magistrate who had issued the warrant, but put him in jail and kept him there until the next day, and did not give him an opportunity to make

bond, then these facts would make the sheriff guilty of falsely imprisoning Branch."

The court states: "We think this requested charge correctly presented an issue raised by the pleadings and evidence, and should have been given."

The foregoing decisions and the following authorities are decisive of the proposition that false imprisonment, or the violation of many other penal statutes by an officer, is "unlawful behavior in relation to the duties of his office." Box v. Fluitt (Tex.Civ.App.) 47 S.W.(2d) 1107, and authorities therein cited; McDaniel v. State (Tex.Civ.App.) 9 S.W.(2d) 478, 481; Huntress v. State (Tex.Civ.App.) 88 S.W.(2d) 636, 637, 648.

In Archbold v. Huntington, 34 Idaho 558, 201 P. 1041, 1045, the Supreme Court of Idaho discusses the failure and refusal of a sheriff to bring his prisoners, who had been arrested under a warrant of arrest, before the court, and holds that such refusal was a neglect to perform an official duty, and the officer was liable under the statute to be ousted from office.

In Lancaster v. Hill, Sol.Gen., 136 Ga. 405, 71 S.E. 731, Ann.Cas.1912C, 272, the Supreme Court of Georgia held it to be official misbehavior for a constable to knowingly make an illegal levy, with the purpose of oppressing one against whom he is legally executing process.

In Kesling v. Moore, 102 W.Va. 251, 135 S.E. 246, 247, the charges in the petition for removal were based on the provisions of a statute (Code 1923, c. 151, § 16a) making it unlawful for any district officer "to be or become directly or indirectly pecuniarily interested in the proceeds of any contract or service, * * * of which, as such member or officer, he may have any voice or control." This section made the violation of the provision quoted a misdemeanor, and imposed a fine on such officer found guilty of the offense. The petition in this case charges that defendants willfully committed the acts prohibited by the statute, and they knowingly and willfully violated the statute. The Supreme Court of West Virginia, in passing upon a demurrer to the petition which alleged facts showing a violation of this statute as a cause for removal, stated: "There could be no act constituting the offense, without participation therein by the officers in their official capacity. As officers they were guilty of unlawful behavior, by participating in the commission of the acts constituting the offense of which they were personally guilty. * * * Manifestly the purpose of the statute was to protect the public. The finding that defendants committed certain acts prohibited by the statute, does not convict them of the criminal offense created by the statute. That would require a charge and proof of criminal intent. * * * But the acts charged do constitute unlawful behavior in their official capacity."

We now refer briefly to the charges contained in causes for removal Nos. 39 and 40, in connection with the three counts already discussed. Here we have an officer instructing his subordinates to keep the prisoners in jail unless they wanted to plead guilty, and to put any one in jail who came to the jail to get any one out. These instructions and this conduct constitute unlawful behavior in relation to his duties as such officer, and are violative of the provisions of the Code of Criminal Procedure above quoted and discussed, as well as article 1176, P.C., which reads: "If any officer or any person having the custody of a prisoner shall wilfully prevent such prisoner from consulting or communicating with counsel, or from obtaining the advice or services of counsel in the protection or prosecution of his legal rights, he shall be confined in jail not less than sixty days nor more than six months and be fined not exceeding one thousand dollars."

In addition to the authorities heretofore cited, see State ex rel. Leche v. Waggner, 42 La.Ann. 54, 8 So. 209, where the Supreme Court of Louisiana held that evidence of the sheriff's unlawfully exacting a dollar from accused prisoners on their release on bail, by refusing them their freedom unless they paid, was sufficient to sustain a verdict for his removal from office. For mistreatment by an officer of a prisoner in his custody in jail as grounds for removal, see State of Kansas ex rel. Roland Boynton, Atty. Gen., v. J. A. Jackson, Sheriff, 139 Kan. 744, 33 P.(2d) 118, 100 A.L.R. 1394.

Respondent testified that he had served 15 years as a peace officer in Texas. When he arrested these men he had charge of the jail at Gladewater and carried the keys to this same jail in which he confined them. Arresting these various individuals and incarcerating them in jail;

giving instructions to his subordinates to keep them in jail until they got ready to plead guilty; and leaving orders to put any one in jail who tried to get them out, disclose a deliberate, willful, and unlawful course of conduct on the part of respondent in the discharge of his duties as constable.

As said by the Supreme Court of Idaho in Archbold v. Huntington, supra, in passing upon these acts of the sheriff: "Manifestly, ministerial officers cannot usurp the functions of courts in this manner, and escape the consequences of their wrongful acts. Appellant's placing the complainants in jail without taking them before the court or a magistrate was a willful and intentional neglect to perform an official duty pertaining to his office, for which he should be ousted therefrom and penalized as provided by said statute."

■ A number of causes for removal, some of which were sustained by the jury, were grounded on board bills for feeding prisoners and specific items charged in these bills. These causes alleged false representations, knowingly made and collecting from Gregg county for same. We pretermit a discussion of these causes for removal and the assignments of error relating thereto, because, if the appellant is guilty of any one of the causes heretofore discussed, it was the duty of the jury to so find (which they did), and of the court, upon such finding, to enter an order removing him from office. Bland v. State (Tex.Civ.App.) 38 S.W. 252; Reeves v. State (Tex.Civ.App.) 258 S.W. 577; McDaniel v. State, supra.

■ In the ninth assignment of error, appellant complains of the following remarks made by state's counsel in opening argument, to wit: "We have indictments against defendant for swindling Gregg County and are going to prosecute him when we get through with him here."

Cause for removal No. 45 in the petition charges that defendant has been duly and legally indicted by a grand jury of Gregg county, Tex., for the offense of swindling from Gregg county; that same has been docketed in the district court of said county; and then listed by docket numbers 27 indictments against defendant. This petition was read to the jury. When appellant was testifying to various items charged up to Gregg county in the board bills, repeated references were made to these indictments that he would testify fully about them and would not claim any immunity for himself because of the indictments pending against him; so these remarks made by counsel conveyed to the jury no additional information to what they had already learned during the trial. Employers' Liability Assur. Corporation v. Young (Tex.Civ.App.) 34 S.W.(2d) 622. That the district attorney was going to prosecute defendant is a natural deduction from the fact that indictments had been returned and docketed against this defendant.

■ In the seventh assignment of error, appellant complains of the following remarks made by state's counsel in the opening argument, to wit: "Make an example of Troy Jones. What kind of example do you think it would be to the other officers of Gregg County to reinstate him?" In passing upon this assignment we are confronted with the decision of Texas Indemnity Ins. Co. v. McCurry (Tex.Com. App.) 41 S.W.(2d) 215, 217, 78 A.L.R. 760, which announces: "The rule is now settled in this state that, where improper argument has been indulged in, the adverse complaining party is entitled to reversal of the judgment, as a matter of law, if under all the circumstances there is any reasonable doubt of its harmful effect, or unless it affirmatively appears no prejudice resulted."

At the close of the testimony appellant moved for an instructed verdict of not guilty. Later, he requested that judgment be rendered for respondent non obstante veredicto. In both of these motions, as set out in the assignments of error, he urged that the facts proved that defendant was acting in a personal capacity and not in an official capacity in relation to the duties of his office as constable of precinct No. 3 of Gregg county, Tex. This same reasoning was the basis of appellant's general demurrer, special exception, and objections to the testimony of plaintiff's witnesses. And appellant does not now in his brief attack the findings of the jury on the questions of facts contained in the respective causes, but contends that such facts are insufficient to meet the requirements of official misconduct, as defined in articles 5970 and 5973.

The evidence is undisputed that Frank Massad, a merchant of Tyler, visited the jail in Gladewater to ascertain why his brother, George Massad, a merchant of Talco, Tex., was confined in jail, and to

make bond or pay a fine for his brother. George had been arrested for a traffic violation.

Likewise, it is undisputed that Frank Welch, manager of a store in Gladewater, had called at the office of the constable and justice of the peace in compliance with a command given by respondent to report there in regard to an Arkansas license on his automobile.

It is uncontradicted that Lewis called at the jail to get one of his employees out, and to pay the fine if necessary.

All three of these citizens of Texas were within their lawful rights to be at or near the constable's office and the jail. The first two were thrown in jail, and the third assaulted by respondent.

Defendant, testifying in his own behalf, admits he put Frank Massad in jail; kept him in for a period of time; and later released him without any charges ever being filed against him. He admits that he locked Willie Johnson up and kept him in jail for a day; that he had no warrant for his arrest; that Willie was not violating any law at the time of his arrest; and that he never filed any charges against him. Respondent made no explanation why he locked Welch up, and did not give him an opportunity to either pay a fine or make bond.

To detail further the testimony of a long line of witnesses, or to discuss other acts and conduct of the defendant sustained by the jury, will unduly prolong this opinion. We have detailed enough to show that this defendant admitted upon the witness stand substantially the charges of false imprisonment of Massad, Welch, and Johnson, either of which is sufficient to sustain the judgment in this case. We come to the conclusion and so hold that the alleged improper argument did not affect the verdict of the jury, and that it affirmatively appears no prejudice resulted. We are of the opinion that a new trial would, under the same facts and without the alleged improper argument, result in the same affirmative findings to causes Nos. 30, 34, and 41 as we have here.

In the language of Justice Bobbitt, Huntress v. State, supra: "A public office is and should always remain a distinct and emphatic public trust. In addition to the general laws of the state which call public officers to strict account, in connection with the discharge of their duties, the Legislature has wisely provid-ed a special, distinct, and prompt method of procedure which is calculated, if properly administered, to relieve the public of the services or abuses of an individual who has willfully violated his trust or negligently permitted the discharge thereof to become a mockery and a reflection upon the true purposes of the office, and the very integrity of the government itself. The record before us clearly reveals that such special laws, enacted for the purpose stated, have been properly and efficiently brought into execution in this case."

The judgment is affirmed.