### EX PARTE JOHN SHERWOOD.

*No. 3590.   Decided December 19.*

1.   **Manslaughter—Homicide Committed in Resisting Illegal Arrest.**—Under the law of this State an attempt to make an unlawful arrest is esteemed so great a provocation that it may reduce a homicide committed in resisting it to manslaughter, by producing such passion as would render the slayer incapable of cool reflection. Such a homicide, however, will not of necessity reduce the killing to manslaughter.

2.   **Same.**—To reduce such a homicide to manslaughter it must be made to appear that an arrest was attempted; that the attempt was to make an unlawful arrest; that the slayer knew of the attempt to arrest, and that he knew that the attempt was to make an unlawful arrest.   The proof in this case is conclusive that even if the applicant knew that an arrest was about to be attempted, he did not know that such contemplated arrest was unlawful.   Such proof eliminates from the case the question of attempted arrest.

3.   **Practice—Escaped Convict—Arrest Without Warrant.**—Article 27 of the Code of Criminal Procedure provides that "whenever it is found that this Code fails to provide a rule of procedure in any particular state of case which may arise, the rules of the common law shall be applied and govern."   In the absence of a statute relating to the arrest of an escaped convict the rule of the common law applies, and under that rule either an officer or a private citizen is authorized to arrest an escaped convict without warrant.

4.   **Same—Carrying Pistol.**—It is now well settled that a peace officer is authorized to arrest, upon information of a credible person and without warrant, any person who has violated the law by unlawfully carrying a pistol.

HABEAS CORPUS on appeal from the District Court of Wise.   Tried below before Hon. J. W. Patterson.

The opinion states the nature of the case.

The evidence shows that the deceased was one of a posse summoned by a peace officer to arrest one Bob Campbell, an escaped convict.   As a secondary object the said officer had in view the arrest of Campbell and his party, including the relator, for carrying pistols.   In this respect he was acting upon information received from credible persons, and without a warrant.   Neither had he a warrant for the arrest of Bob Campbell as an escaped convict.   As the posse approached Campbell's house, and before it got near enough for the officer to declare his official character and his business, it was fired upon by Campbell's party, which, as stated, included the relator, and the deceased was killed.

*Holman & Warren,* for relator.

*W. L. Davidson,* Assistant Attorney-General, for the State.

HURT, JUDGE.—The appellant was indicted on February 11, 1889, by the grand jury of Wise County for the murder of J. M. Coglan. Subsequently he obtained from the judge of that district a writ of habeas corpus, and upon the hearing of the same he was granted bail in the sum of $5000. From this order or judgment the applicant appeals to this court, contending that the amount of the bail is excessive in view of the facts in the case.

Counsel for appellant contend that this homicide was committed in the prevention of an illegal arrest, and hence the crime is not greater than murder of the second degree, committed under mitigating circumstances, and that it may be manslaughter.

We desire to give our views on the subject as to what degree of offense the prisoner would be guilty when the homicide is committed to prevent an illegal arrest. In Drew's case, 4 Massachusetts, 391, it was held that if the killing is in resistance of unlawful arrest it is no more than manslaughter. This is supported by other cases. Roberts v. The State, 14 Mo., 147; Harrison v. The State, 24 Ala., 67. An exception is engrafted upon this rule, which is that unless there be proof of express malice.

Another rule is that if the killing is in resisting an unlawful arrest it may be manslaughter. Why? Because the "law sets such a high value upon the liberty of the citizen that an attempt to arrest him unlawfully is esteemed a great provocation." This principle is well established in England and in this country. Horrigan & Thompson's Cases on Self-Defense, 716, and note.

The difference in the two rules is that in the first the crime will be no greater than manslaughter, and in the second it may be manslaughter or it may be murder; and under certain circumstances the homicide may be justifiable. The State v. Oliver, 2 Houston (Del.), 605, 606.

We hold with the last rule—that is, that an attempt to arrest the accused unlawfully is esteemed a great provocation, and may reduce the killing to manslaughter by producing such passion as would render him incapable of cool reflection. We have not held that a killing to prevent an unlawful arrest must of necessity be nothing greater than manslaughter. From the rule other matters become of the greatest importance.

There must be an attempt to make the arrest. The attempt must be to make an unlawful arrest; the prisoner must know of the attempt, and he must know that the attempt is to make an unlawful arrest. Why? Because without such knowledge the provocation could have no effect upon him whatever, and hence without such knowledge it is absolutely certain that his passions, if any, were not caused by this provocation.

Applying these principles to the case in hand as made by the facts, the attempted arrests are eliminated from the case, for the reason that the evidence renders it certain that the prisoner did not know whether the attempted arrests were unlawful, if indeed he knew that arrests were *about*

to be made.   He may have known that an attempt would be made to arrest him and his party, and he may have believed that the officers and posse were approaching the premises of Mr. Campbell for the purpose of arresting him and Bob Campbell and others.   But there is not the slightest circumstance in this record tending to show that he knew or had reason to believe that the intended arrests were unlawful.

There is another rule bearing upon this subject, which is that a lawful power to arrest may be exercised in such a wanton and unnecessary manner as to make the officer a trespasser and justify resistance.   This rule is discussed in the note to Drew's case, Horrigan & Thompson's Cases on Self-Defense, 715.   This upon the trial may be a theory in the case.

But were the intended arrests, under the facts now before us, unlawful? Bob Campbell was an escaped convict.   Had the officer and his posse the legal right to recapture him—arrest him—without a capias?   At common law not only officers but private citizens had this right.

But it may be contended that the State, by her different statutes, regulates this matter, and hence the common law can not be looked to for the rule, and that "all of the circumstances which justify an arrest without warrant or lawful authority are stated in our own statute." Staples's Case, 14 Texas Ct. App., 136.

Let us examine this proposition.   We think it correct when properly applied.   What is an arrest?   In criminal cases it is "the apprehending or detaining of the person in order to be forthcoming to answer an alleged or suspected crime."   Bouv. Law Dic.   There was no crime alleged against Bob Campbell.   Had he been recaptured he would not have been taken before any tribunal to answer a crime, but would have been returned to the penitentiary from which he had escaped.   Technically, he would not have been arrested, but recaptured.   Now, our statute treats of arrests and not the recapture of convicted felons who have escaped from the penitentiary.

We have no statute providing for a warrant or capias to be issued for the recapture of an escaped convict.   This being so, the escaped convict is beyond the reach of the law as long as he remains in the State.   What officer has the right to issue the warrant?   We know of no provision of the statute bearing upon this subject.   What must be the requisites of the complaint?   Certainly not those contained in article 235 of the Code of Criminal Procedure.

Let us suppose, however, that something in the nature of a complaint is made, and that the warrant issues.   What must the officer making the arrest do?   Take the prisoner before the magistrate who issued the warrant, or before some magistrate named in the warrant?   When brought before the magistrate what shall then be done?   Shall the proceeding be had in the case contemplated by the provisions of chapter 3 of title 5 of the Code of Criminal Procedure?

We will follow this branch of the inquiry no further, remarking that we have no statute in this State prescribing the procedure to secure the recapture of an escaped convict, and hence we are relegated to the common law.

We desire to make some observations on the rule stated in the Staples case, *supra*, that "all the circumstances which justify an arrest without warrant are stated in the statute."

Our views are that the provisions of our statutes bearing upon this subject have two objects—first, to prescribe the duties of officers, etc., and, second, to protect the liberty of the citizen or individual who has not lost his liberty and is presumed to be entitled to it. The officers should know their duties and understand with what authority they are invested. The individual citizen, being a freeman, should be protected in his liberty against unreasonable and oppressive arrests and imprisonments. Every person is presumed innocent of all crime, and is therefore entitled to his liberty, with the strong arm of the law to protect it, unless by his own acts he has forfeited it, or by the acts of others he is deprived of it—said acts of others being complaints, or when the officers act upon information, etc.

Now, how stands the case with the escaped convict? Has he any right to his liberty? Is he a freeman? Is he not a slave of the State? Certainly he is. This being his condition, it is evident that the law makers were not attempting to protect him in his liberty, for he has none to be preserved. It is very evident to our minds that he was not thought of when the statutes were enacted regulating arrests.

Our conclusions are that at common law officers and private citizens could without warrant recapture an escaped convict; that there being no statute of this State bearing directly upon the arrest of an escaped convict, the rule of the common law obtains. By that law no warrant is necessary to authorize an officer or private person to make the arrest. See Wallace v. The State, 20 Texas Ct. App., 360.

We have stated that there is no statute directly bearing upon this subject. By analogy, however, we infer authority to arrest the convict from article 258 of the Code of Criminal Procedure. If an arrest can be made without warrant in case of the escape of the prisoner once arrested, evidently an escaped convict can be recaptured without warrant. It will be noticed that this is not termed an arrest or rearrest in said article, but a retaking.

That arrests may be lawfully made without warrant by officers and posses when they are informed by some credible person that the party arrested has violated the law by unlawfully carrying arms, is now well settled. Penal Code, art. 322; Jacobs v. The State, 28 Texas Ct. App., 79.

We have not attempted to apply the rules and principles here stated to the facts of this case. This would not be proper. But we have endeav-

ored to clearly state them, so that on the trial of this case they can be applied to the different phases of the case which may be presented by the evidence.

There was no error in the judgment of the court below, nor was there error in refusing to reduce the amount of the bail.    The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.