THOMAS BISHOP v. JAMES E. LUCY ET AL.

Decided May 10, 1899.

1. **Arrest—False Imprisonment—Treatment While Confined.**

In an action against a city marshal and policemen for damages from unlawful arrest and subjection to unnecessary hardships while confined in the city jail,—the arrest, though without warrant, being lawful,—the defendants could not be held liable for the improper treatment unless shown to be in control of the city jail, or otherwise responsible for plaintiff's treatment while in confinement.

2. **Arrest—Taking Before Magistrate—Waiver.**

One arrested on charge of crime may waive his right to be taken at once before a magistrate, so far, at least, as concerns his right to a civil action for damages; and where he consented that such course should be postponed till the arresting officers could investigate and determine whether to release him, he can not maintain action for his confinement pending such investigation, if conducted with reasonable diligence.

3. **Same—Duress.**

The fact that the accused was under arrest at the time of making the waiver of his right to immediate judicial examination will not render such waiver void as being made under duress.

4. **Arrest—Examination Before Magistrate—Reasonable Time.**

No unreasonable delay is shown in taking a party arrested before a magistrate for examination, where the arrest was at 4 o'clock a. m., and the arrested party waived the right to such examination at 9 a. m. of the same day.

APPEAL from Travis. Tried below before Hon. F. G. MORRIS.

*Hamer & Gordon,* for appellant.

*Geo. F. Pendexter* and *Geo. E. Shelley,* for appellees.

FISHER, CHIEF JUSTICE.—This is an action by appellant Bishop against Lucy and the sureties on his bond as city marshal of the city of Austin, and policemen Grizzard and Platt, for damages sustained on account of alleged injuries, as follows, inflicted upon him by Lucy, Grizzard, and Platt:

After alleging that Lucy was marshal of the city of Austin and that Platt and Grizzard were two of its policemen, and after stating certain duties imposed upon the marshal and the policemen and their power with reference to arresting offenders, and after, in effect, admitting that arrests may be made without warrants for felonies committed within the limits of the city, the petition avers that a burglary was committed on the night of the 11th of February, 1898, at the establishment of the San Antonio Brewing Association, situated in the city of Austin, and that officers Grizzard and Platt were immediately notified of this fact, and were given a description of the supposed burglar, and that a short while thereafter, within two blocks of the place where the burglary was committed, they arrested the plaintiff and accused him of being the person who committed the crime, and stated that he answered the description of such person as given to such officers, and that they required the plaintiff to accompany them to the place where the crime was committed, and the parties who claimed to be able to identify the burglar, stated to the officers that the plaintiff did answer the description of the party who had committed the crime, and that they then and there accused the plaintiff to said officers of being guilty of the crime of burglary; that Grizzard and Platt, as police officers, acting upon the accusation and identification of plaintiff as the party who committed the crime of burglary, and not having time to procure a warrant, at about 4 o'clock a. m. of the 11th of February, 1898, arrested the plaintiff, against his will, without a warrant, for the crime of burglary, and they compelled the plaintiff to go to the city jail of the city of Austin. While en route the plaintiff was not permitted to walk on the sidewalk, but was forced to take the middle of the street, and was forced by the policemen to walk through mud and water. While on the way to the jail, Grizzard and Platt used harsh and abusive language towards the plaintiff, cursing him and threatening to shoot him, and that officer Platt forced his horse against the plaintiff, causing him to step on the plaintiff's heels. When they reached the jail, they imprisoned the plaintiff and kept him detained as a prisoner, without process or lawful authority, from 4 o'clock a. m. of the 11th of February until 10 o'clock a. m. of the 16th of February, 1898,—they, together with their codefendant Lucy, all the while willfully and maliciously failing and refusing to take the plaintiff before a magistrate for examination, and that, while so imprisoned, the defendants denied plaintiff the benefit of counsel.

Plaintiff further alleged that, a few hours after his arrest, Lucy, as city marshal, was informed of that fact, and approved and ratified the acts of Grizzard and Platt; and thereafter he assumed and maintained absolute control over the person of the plaintiff, and, acting through hate, malice, and ill will, he refused to convey plaintiff before a magistrate, but kept him detained without process or probable cause that he was the guilty party. He further alleges that he was kept closely confined, without the benefit of seeing his friends, and was denied the right of counsel; and that the cell in which he was confined was dirty, filthy, cold, and poorly ventilated, and was absolutely bare of the ordinary comforts of prison life; that he had neither bed, cot, nor hammock; that the cell was not supplied with any stove, grate, or fireplace, and that the plaintiff suffered greatly from pain and bodily affliction on account of cold; that he only had one small blanket, which was not sufficient to provide necessary warmth. He also alleged that on the 16th of February, 1898, the defendants caused to be made a false affidavit against him, charging him with the crime of burglary. He further states that he was not guilty of the crime, and was carried before a magistrate on the 17th of February, 1898, and was discharged.

The case was tried before the court without a jury, and judgment was rendered in favor of the defendants. The trial court found the following conclusions of fact and law:

"1. I find that the charter provisions and ordinances of the city were as pleaded by plaintiff, and that the arrest in question was made upon the authority and for the causes set out in plaintiff's petition, but do not find that the allegations as to abuse of plaintiff or violence to his person during the carrying of him to the city prison are proved.

"2. I find that at or before 9 o'clock a. m. the same day of plaintiff's arrest, the city marshal gave him the option of being immediately carried before a magistrate or of remaining in the city prison until an investigation could be made by the marshal and police officers to determine whether they would file a charge of burglary against plaintiff, and that plaintiff expressed to the city marshal his preference to remain there in the city prison until the investigation could be made, hoping that no charge would be preferred against him before the magistrate. He did not thereafterwards express any change of preference in this regard, or complain to any of those concerned in his custody that he was detained longer than was necessary to make the investigation, but, without the knowledge of the city marshal or police officers, applied for a writ of habeas corpus to obtain his release from prison, whereupon the marshal, having learned of said application, caused plaintiff to be turned over to a constable of Travis County, who at once preferred charges against him and obtained a warrant by which he was held until examination could be had, when he was discharged.

"3. The preponderance of the evidence is against the truth of the allegations as to every part of the alleged ill treatment while he was confined in prison, and I find those allegations are not sustained.

Conclusions of Law.—"Under the facts pleaded by plaintiff, I find that the arrest was a legal arrest without warrant, and that the detention of plaintiff, without taking him before a magistrate immediately, in view of the plaintiff's agreement to waive being immediately taken before a magistrate, furnished no cause of action for plaintiff."

There is evidence in the record which authorizes us to agree with the trial court in its conclusions both of fact and law.

There is evidence in the record which shows that the cell in which the plaintiff was confined was not a proper place to confine a prisoner; that it contained an open sewer, which allowed the sewer gas to escape and fill the cell; and the evidence shows that confinement in such a place was calculated to injuriously affect the plaintiff. The evidence for the defense in this particular does not, in our opinion, rebut or deny the evidence of the plaintiff upon this point; and for the injuries sustained on this account, the plaintiff might have his action against the guilty parties who are responsible therefor; but his testimony did not connect these defendants with the injuries sustained in this respect, if any.

He says that he was put into a cell where the gas and the odors were very bad, and he complained to the janitor, who removed him to another cell, and the sewer in this last cell was out of fix and allowed the gas to escape and fill the room, and he was detained in this cell until removed therefrom on the 16th of February. And goes on to state that the cell contained an open sewer in which prisoners confined responded to nature's calls, and that the sewer was clogged up and could not be flushed, and the escaping gas was coming into the room all the while he was confined there. But there is no evidence showing that either of the defendants were responsible for the condition of this cell, or that they placed the prisoner therein or knew that he was confined in the cell in which this condition is shown to exist. He testifies himself that he was placed there by the janitor. If he was placed in the cell by the janitor or by some one else other than these defendants, and they were not parties to placing him there or responsible for his being in the cell, they could not be held liable for the injuries sustained in the particular way noticed.

We do not judicially know that Lucy, as marshal, or policemen Platt and Grizzard, had control over the cells and were responsible for their condition. We can only go by what is stated in the record upon this subject, and the plaintiff, if desiring to recover on this branch of the case, should have connected the defendants with the treatment inflicted upon him in this respect.

The court did not expressly find upon that branch of the case which charged the defendants with making a false affidavit against the plaintiff, charging him with the offense of burglary and causing him to be arrested and detained therefor, but the testimony upon this subject does not connect the defendants with the accusation made before the magistrate. It appears from the testimony that on the 16th of February the plaintiff was turned over and delivered to Deputy Sheriff Peck by Policeman Montgomery, and that under the direction of Policeman Montgomery, Peck

made affidavit charging the plaintiff with burglary. There is no evidence in the record connecting these defendants with that act.

The statute requires that when one is accused of a felony and arrested, he shall be taken before a magistrate for examination. It is contended by the appellant that this duty is imperative upon the part of the officers making the arrest, and that the offender, while under arrest, can not voluntarily waive this requirement of the statute. The arrest, it appears, in this particular instance, was made about 4 o'clock in the morning. The prisoner was immediately conducted to the city jail and there confined, when he was interviewed about 9 o'clock the same morning by City Marshal Lucy, who testifies to the fact that he informed the prisoner of the charge against him, and that he would have to be taken before a magistrate, and the prisoner, in effect, requested that this be not done, and that he would remain in the jail until the city police could investigate whether he was the guilty party; and Lucy testifies that it was upon this request that he was not taken before the magistrate, and that investigation was immediately made; and the evidence shows that it was continued up to the time that the prisoner was turned over to Deputy Sheriff Peck.

We do not believe any point can be made in favor of plaintiff upon the fact that he was not taken before the magistrate before 9 o'clock, the time at which the evidence shows he waived his right to be taken before the magistrate.

The statute in requiring the prisoner to be carried before the magistrate contemplates that this should be done within a reasonable time after his arrest. It was shown that he was arrested early in the morning, about 4 o'clock, at a time at which it can be assumed that the magistrate was not in his office, and his confinement up to 9 o'clock, under the circumstances, we do not think was unreasonable. When that time was reached, he expressed a desire not to be taken before a magistrate, as he wished the police to make an investigation.

We do not believe there is anything in the policy of the statute which would prohibit a party accused of a crime from waiving his right or the time in which he should be carried before a magistrate. The law upon the subject may be imperative, so far as the duty is imposed upon the officer, and he may or might be held responsible in a criminal prosecution, if he failed, within a reasonable time, to carry the prisoner before a magistrate, and the consent of the prisoner or the waiver of the prisoner, under the circumstances, might not be a defense by the officer to the criminal prosecution. But where the party accused voluntarily waives the right to be carried before the magistrate and consents to confinement for a reasonable time to await an investigation and examination by the police authorities, we do not believe that under such circumstances he could predicate an action for damages against the officer, based upon a detention which he consented to.

The police officers had the authority, under the circumstances, to make the arrest without warrant. This is practically conceded by the plaintiff, and it was their duty to immediately investigate the facts, and to ascer-

tain if the party arrested was the guilty agent. The law does not limit the time in which this duty should be performed; but it must be a reasonable time, consistent with the circumstances and the gravity of the charge, and the investigation must be made with reasonable diligence and dispatch.

A prisoner being arrested under these circumstances, if immediately carried before a magistrate, could not insist upon an immediate discharge, but the State would have the right to ask for a reasonable postponement in order to procure witnesses and collect its evidence connecting the defendant with the crime.

Now the defendant when arrested, as a matter of law, evidently knew of the duties of the officers in the way noticed, and that it was their duty to carry him before a magistrate, so that the crime could be judicially investigated. He knew that if carried before a magistrate the investigation would be public and that there would be a prosecution, and that the State, for good reasons shown, might delay it. In order to avoid this, he in effect expressed a desire that the police investigate his connection with the crime, hoping and expecting thereby that he would be discharged without any public prosecution, as he confidently believed that, from an investigation, they would fail to connect him with the commission of the offense. The evidence shows that the police department exercised reasonable dispatch in making the investigation; or in other words we can not say, under the facts, that there was a want of diligence in this respect.

Now, under these circumstances, the plaintiff asks that the defendants be mulcted in damages for unlawfully detaining him in custody without taking him promptly before a magistrate so that his connection with the offense could be investigated. An answer to this is, that the conduct of the plaintiff, in our opinion, estops him from claiming damages under the circumstances.

There is no merit in the contention that the plaintiff could not waive his right to be carried before a magistrate, because he was in arrest, and therefore the agreement was made under duress. The waiver in question was not an act to which the principles of the law of duress apply.

The statements made in the opinion as to the facts and the findings of fact answer the other questions raised in the brief. We find no error in the record, and the judgment is affirmed.

*Affirmed.*