BERTH HEATH V. J. A. BOYD.

No. 8133. Decided November 17, 1943.

(175 S. W., 2d Series, 214.)

*T. R. Johnson,* of Big Lake, for petitioner.

It was error for the Court of Civil Appeals to hold that the evidence did not conclusively show that the arrest of petitioner by respondent without a warrant was illegal and unlawful, entitling petitioner to damages as a matter of law. Allen v. State, 66 S. W. 671; Continental Casualty Co. v. Miller, 135 S. W. (2d) 501; Pratt v. Brown, 80 Texas 608, 16 S. W. 443.

*Collins, Jackson, Snodgrass* and *Blanks,* of San Angelo, for respondent.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

Petitioner, Berth Heath, sued respondent, J. A. Boyd, sheriff of Irion County, for damages for false imprisonment. A jury verdict on special issues resulted in a judgment for Boyd, which was affirmed by the Court of Civil Appeals. 171 S. W. (2d) 396.

The point at issue is the authority of a peace officer to arrest without warrant.

The commissioners' court of Irion County undertook to construct a lateral road from a main highway to and across several ranches, one of which was in the possession of one R. D. Johnson, as lessee. After the work began, a difference arose between Johnson and the court as to what route the road should take on his ranch. Heath, as employee of the commissioner of that precinct, was operating a maintainer on Johnson's ranch to take off whatever had to be removed to construct the road. Johnson went to Heath and the other employees and asked them to suspend work, telling them the county judge had said that work would cease until Johnson and the court could settle the controversy. The other employees quit, but Heath persisted with the maintainer.

Before he thus attempted to stop the work, Johnson had called Boyd. And the latter was waiting at the home of Johnson's brother, some three or four miles away, while Johnson was conferring with the road crew. After Heath refused to quit, Johnson returned to Boyd to report. After Johnson promised to file a complaint, Boyd went to Heath and asked him to stop until the matter could be settled. Boyd testified that Heath's reply was, " 'The only way to stop me is to arrest me.' I told him I didn't want to do that and he said, 'that is the only way I will stop.' I said 'If that is the way you feel about it I will have to arrest you'." Heath then entered Boyd's car and was driven to the road camp, where he got into his own car and drove to the county seat, followed by Boyd. There he was taken to the sheriff's office, where he remained for a period variously estimated to have been from one to three hours. During that interval Boyd called Johnson and asked him to come in and file a complaint, but Johnson replied that he had decided not to file it. Heath was then released, whereupon he went back to work and fiinished the road in about a week without being molested any further by anybody. No complaint was ever filed and no warrant of arrest was ever issued.

Boyd's pleading was that he arrested Heath "to prevent a threatened breach of the peace between Johnson and Heath and in an attempt and in order to protect the property lawfully in the possession of Johnson"; that everything he did "was done for the sole and only reasons as are set out above." When asked what law he thought Heath was violating, Boyd testified, "I figured he was trespassing." Although that testimony would seem to limit the question to his authority to arrest Heath for trespassing, we shall consider it also from the standpoint of his authority to make the arrest to protect Johnson's property and to prevent a threatened breach of the peace.

■ Art. 1, sec. 9, of the Constitution of Texas, guarantees that the people shall be secure in their persons from all unreasonable seizures. Therefore, despite *obiter dicta* expressions to the contrary in a few cases, our courts, both civil and criminal, have consistently said that the arrest of a citizen without warrant is an unreasonable seizure of his person, unless it is expressly authorized by statute. An early criminal case is Lacy v. State, 7 Texas App., 403; a late one is Rodriguez v. State, 172 S. W. (2d) 502. A recent civil case is Continental Casualty Co. v. Miller (Civ. App.), 135 S. W. (2d) 501. There are many others. See McBeath v. Campbell (Com. App.), 12 S. W. (2d) 118; Karner et al v. Stump (Civ. App.), 34 S. W. 656; Regan v. Harkey

(Civ. App.), 40 Texas Civ. App. 16, 87 S. W. 1164 (er. ref.) ; Jones v. State (Civ. App.), 109 S. W. (2d) 244; Clement et al v. Emmons (Civ. App.), 170 S. W. (2d) 610 (er. ref. want of merit) ; Mundine v. State, 38 S. W. 619; Staples v. State, 14 Texas App., 136; Allen v. State, 66 S. W. 671; Harless v. State, 109 S. W. 934; Buchanan v. State, 74 S. W. (2d) 1022.

And, since the subject is thus exclusively regulated by the Constitution and statutes of this state, it follows that the authority to arrest without warrant cannot be conferred by the common law or by the court decisions of other states. Lacy v. State, supra; 6 C. J. S., sec. 5 a, p. 579. This rule has two objects, namely (1) to protect the right of the citizen to his liberty, under the presumption of his innocence of all crime; and (2) to inform peace officers as to the limits of the authority with which they are invested. Ex parte Sherwood, 15 S. W. 812. In Pratt v. Brown, 80 Texas, 608, 16 S. W. 443, relied on by Boyd, the precise question was the authority of a policeman to arrest, without warrant, a person found drunk in a railway station, and it was correctly held that the arrest was legal because Art. 363, of the revised statutes of that day, authorized the city marshal and his deputies to "arrest without warrant all who are guilty of any disorderly conduct or disturbance whatever," and the opinion expressly recognizes that the court did not have to resort to the common law to decide the question. Hence, any statements therein that the common law authorizes arrest without warrant in some instances, or that peace officers are invested with that broad power as conservators of the peace, are purely gratuitous, and they are not even of persuasive force, in the face of many cases to the contrary.

■ The only circumstances under which one may lawfully be arrested without warrant are: (1) when he commits a felony or a breach of the peace (a) within the presence or view of the officer or other person, Art. 212, C. C. P., 1925, or (b) in the presence or view of a magistrate who verbally orders his arrest, Art. 213, ibid.; (2) when his arrest may prevent the consequences of theft, Art. 325, ibid; (3) when a peace officer is informed by a credible person that a felony offender is about to escape and there is no time to secure a warrant, Art. 215, ibid.. (4) when the accused threatens to take the life of another, within the hearing of a magistrate, the *magistrate* may arrest him, if the case is one of emergency, Art. 73, ibid.; (5) when he is an escaped prisoner, Art. 244, ibid., which is really retaking and not an arrest, Ex parte Sherwood, supra; (6) when the ordinances of a city or town may authorize such action as to persons found in suspicious places or under cir-

cumstances reasonably showing that they have been guilty of some felony or breach of the peace or threaten or are about to commit some offense, Art. 214, ibid.; and (7) generally, for any offense when the statute defining the same expressly confers the authority, e. g., highway violations, under Art. 803, P. C., 1925; liquor violations, under Art. 666-30, Vernon's Anno. P. C.; unlawfully carrying arms, under Art. 487, ibid.; rioting, under Art. 98, C. C. P., 1925; unlawful assembly, under Art. 101, ibid.; disloyalty, under Art. 156, P. C., 1925.

If the situation claimed to authorize an arrest without warrant does not come squarely within some one of the foregoing classifications, the authority does not exist, because the statutes are strictly construed. Authorities, supra. The only statute that carries even a semblance of authority for the arrest of Heath is Art. 212, C. C. P., 1925. It empowers a peace officer or other persons to arrest an offender, without warrant, when the offense is committed in his presence or view, provided it is a felony or is classed as an offense against the public peace. Boyd pleaded that he arrested Heath to prevent a *threatened* breach of the peace between the latter and Johnson. The statute says an *offender* may be arrested for an *offense committed.* That language clearly implies that all the elements necessary to be proved to sustain a conviction of the accused must exist to give a peace officer the authority to arrest him without warrant. Manifestly, since Johnson was three or four miles from the scene of the arrest, there was, at most, only a possibility of later trouble between him and Heath if Heath did not abandon the road work, and even that seemed remote in view of the fact that there was no disturbance between them at their interview earlier in the morning. And nobody would contend that Heath's conduct in the presence of Boyd would sustain his conviction for any breach of the peace. On neither occasion did Heath exhibit any weapon. At no time did he yell, shriek, curse, abuse or threaten anybody, or commit any other act denounced as a breach of the peace by Arts. 439 to 489b, P. C., 1925. He only wanted to operate the maintainer and insisted on doing so. That a breach of the peace might be precipitated by that attitude did not justify his arrest without warrant, under Art. 212, supra. The mere possibility or danger that one may occur is not enough to legalize such an arrest. Otherwise, the liberty of the citizen would be hazarded on the guess of a peace officer as to what may happen rather than on his knowledge of what has happened. Rucker v. Barker, 108 Texas, 280, 192 S. W. 528; Brown v. Wallis, 101 S. W. 1068; 100 Texas 546, 101 S. W. 1070; and Mundine v. State, supra, are ilustrative cases.

■ Nor does Boyd's testimony that he "figured" Heath was trespassing furnish any justification for the arrest. Trespassing is not a felony or a breach of the peace. It is not one of those offenses for which the statute defining it gives the peace officer the right to arrest the offender without warrant. It was held in Freeman v. Costley (Civ. App.), 124 S. W. 458, that one attempting to ride a passenger train without paying his fare, could not be arrested without warrant as a violator of Art. 1673 P. C., 1925; and in Gilbert v. State, 181 S. W. 200, that the fact that the accused was caught running another's goats did not justify his arrest without warrant. Yet clearly both offenders were trespassers. So we hold that Boyd had no authority to arrest Heath as a trespasser, for the sufficient reason that there is no statute authorizing any such arrest. Authorities cited in the fifth paragraph, above.

But it is argued that, independent of the articles of the statutes specifically dealing with the subject, Boyd had the right to arrest Heath under the provisions of Arts. 77 and 78, C. C. P., 1925. Under Art. 77, when one person is about to commit an offense against the property of another within the presence or view of a peace officer, it is the officer's duty to prevent it, but he must use no greater force than is necessary. Art. 78 provides that the conduct of the officer, in preventing the offense, is to be regulated by the same rules as are prescribed to the action of the person about to be injured; that he may use all force necessary to repel the aggression. Two facts about these statutes are significant, namely, (1) they make no reference whatever to any right of the peace officer to arrest a person about to commit an offense against the property of another; and (2) in whatever the peace officer attempts under them, he is strictly limited to what the owner of the property can do. So, if Johnson could have taken Heath into custody and could have taken him into Mertzon, several miles distant, and could there have held him from one to three hours, without a warrant and without ever filing any complaint, Boyd could do so. Otherwise, he could not, because Art. 78 plainly says his conduct was regulated by the same rules as circumscribed Johnson's action. If it may be assumed that Johnson's view of the situation was correct all he could legally do was to use such force and means as, viewed from his standpoint, were reasonably necessary to stop Heath from operating the maintainer and to expel him from the premises. He could do no more, therefore Boyd could do no more. It has been so held many times. The cases hold unequivocally that these statutes contemplate only that the officer shall prevent the wrong then being committed or attempted and that they were never meant to confer upon him any authority of

arrest without warrant. They recognize that his authority in making a lawful arrest is much broader than it is in preventing injury to property. See Freeman v. Costley; Mundine v. State; Allen v. State, and Gilbert v. State, supra.

■ Moreover, if Heath's arrest had been authorized by the statutes, his subsequent detention as pleaded and proved would make a case of false imprisonment against Boyd. The undisputed facts are that after his arrest Heath rode with the sheriff to the former's car, which he then entered and drove several miles to the courthouse, followed by Boyd. There he was detained in Boyd's office from one to three hours, while Boyd was seeking advice by telephone as to what to do, in the face of a plain statutory command as to what must be done in all cases of arrest without warrant. Art. 217, C. C. P., 1925, provides, "In each case enumerated in this chapter, the person making the arrest shall immediately take the person arrested * * before the nearest magistrate where the arrest was made without an order." Substantially the same requirement appears in Art. 325, C. C. P., 1925, and Art. 487, P. C., 1925. Presumably, there was a magistrate in Mertzon, the county seat. Yet Boyd offers no reason why he did not take Heath before that official. Neither in his pleadings nor in his testimony does he suggest that a magistrate was not reasonably available, although the arrest and detention all occurred between 8 o'clock in the morning and noon. If he had taken Heath to that official, he could have gotten the information and assistance he was seeking by telephone. He was under no obligation to seek advice or aid from Johnson. He was under a positive duty immediately to seek a magistrate. That such failure, unexcused, makes a case of false imprisonment, as a matter of law, is held by all the authorities. Newby v. Gunn et al, 74 Texas, 455, 12 S. W. 67; McBeath v. Campbell, 12 S. W. (2d) 118; Alamo Downs, Inc., et al v. Briggs (Civ. App.), 106 S. W. (2d) 733 (er. dism.); Box v. Fluitt (Civ. App.), 47 S. W. (2d) 1107; Maddox v. Hudgeons (Civ. App.), 72 S. W. 414 (er. ref.); Karner et al v. Stump (Civ. App.), 34 S. W. 656; Petty v. Morgan et al (Civ. App.), 116 S. W. 141; Bishop v. Lucy et al (Civ. App.) 50 S. W. 1029; 35 C. J. S., p. 546, sec. 31

It follows that the trial court erred in rendering judgment for Boyd on the jury's answers to special issues 1, 2 and 3 that Heath was blading the road without Johnson's consent, that Boyd believed it reasonably necessary to arrest Heath to stop the maintainer without a disturbance of the peace, and that it was reasonably necessary for Boyd to arrest Heath to pre-

vent injury to Johnson's property, since those issues were immaterial on the legality of the arrest. The issue for the jury, in connection with Heath's claim for actual damages, is the amount to be awarded. Karner et al v. Stump, supra.

Except as the same may be affected by what we have said, there is no question before us in relation to Heath's prayer for exemplary damages.

The judgments below are reversed and the cause is remanded to the district court for a new trial.

Opinion adopted by the Supreme Court November 17, 1943.