**SMITH et al. v. JUNGKIND.**

No. 10068.

Court of Civil Appeals of Texas. Austin.
Oct. 29, 1952.

Rehearing Denied Nov. 19, 1952.

Carl Wright Johnson, Swearingen & Sayles and Eskridge & Groce, all of San Antonio, for appellants.

Lawrence Bruhl, Llano, Robert E. Lee, Mason, Charles J. Lieck, Sr., San Antonio, for appellee.

GRAY, Justice.

Appellee sued appellants for damages sustained by him as the result of an alleged intentional shooting of appellee by appellant, Dean Oscar Smith, while acting in the course of his employment with appellants, H. A. Fitzsimmons and Fitzsimmons Land and Cattle Company.

Upon the trial a jury, among other findings, found that: Dean Oscar Smith fired the shot that struck appellee; that he fired the shot with intent to injure; that the shot was the proximate cause of appellee's injuries; that at the time he fired the shot

Smith was acting in the scope of his employment; that appellee's injuries were not the result of an unavoidable accident; that $4,000 would fairly and reasonably compensate appellee for his injuries; that Smith acted with malice when he fired the shot, and that $1,000 should be paid appellee as exemplary damages.

Upon the jury's verdict a judgment was rendered against appellants, jointly and severally, for $4,000, with interest and against appellant, Smith, for $1,000 and interest as exemplary damages.

Appellants here present seven points which, collectively, are to the effect that: there is no evidence to support the findings of the jury and the judgment of the trial court; the verdict of the jury and the judgment are so against the great preponderance of the evidence as to show that a manifest injustice has been done; the evidence is insufficient to support the verdict and the judgment, and that the testimony as to declarations or admissions made by Dean Oscar Smith at places other than at the place where the shooting occurred were not admissible as against "H. A. Fitzsimmons Land and Cattle Company."

The undisputed facts show that H. A. Fitzsimmons and Fitzsimmons Land and Cattle Company operate a ranch in Llano County; that H. A. Fitzsimmons is president of the company; that Dean Oscar Smith was employed by H. A. Fitzsimmons to patrol the ranch pastures, to protect them from trespassers and depredations, and to apprehend hunters who were on the property without permission. There was issued to Smith, upon the request of H. A. Fitzsimmons, a special ranger's commission. On the afternoon of December 18, 1947, Jack Gregory, a State game warden, went to the Fitzsimmons ranch and then went with Smith to a pen some distance from the ranch house for the purpose of shoeing a horse which was apparently used by Smith in the performance of his duties. After the horse was shod, the two men, traveling in Gregory's car, left the pen and as they went along a road they saw a man (appellee) who ran. They gave pursuit, first in the car and then on foot. While on foot and pursuing appellee some four or five shots were fired by Smith and Gregory. Appellee had a gun with him but did not fire it. At the time appellee was on a fence separating the Fitzsimmons' land from adjoining land, or just after he had gotten over the fence (appellee said it was after he had gotten over the fence while Smith and Gregory said it was when he was on the fence) a bullet struck him in the right leg breaking and shattering the bone above the knee. Appellee fell about fifteen feet from the fence outside of the Fitzsimmons pasture. Smith and Gregory then went to appellee, placed him in their car and carried him to a hospital in Llano where he received medical attention and where he remained for a few days and was then sent to San Antonio for further treatment. There is no dispute as to appellee's injuries nor his disabilities resulting therefrom.

The caliber of the gun that inflicted the wound on appellee is not shown by testimony as to the wound or the bullet removed therefrom—the evidence shows the bullet was in such condition that a ballistic examination could not be made. Smith did say the wound was a large caliber wound, and could not have been made by a 22 rifle. On that day both Smith and Gregory had 44 caliber pistols. Smith said while he was pursuing appellee his pistol was in the car and that he had a 22 caliber rifle with him.

Appellee said on the afternoon of December 18, 1947, he decided to go deer hunting on the Fitzsimmons property and that he did not have permission to hunt there; that he walked through a pasture belonging to Mr. Mallot and climbed a fence and went into the Fitzsimmons pasture; that when he had gone 500 or 600 yards into the pasture he saw a car coming down a road; that he turned and ran back toward the fence; that when he was near to the fence he heard two or three shots; that after he got over the fence and about fifteen feet from it he heard a shot and felt an impact in his leg and that he fell on his face; that appellant, Smith, was the first one to him and that

"A. First thing he did was caught me by the shoulder, pulled me over on my back, and said, 'Where did I hit

you?' I said, 'I think you broke my leg.' He said, 'Well, that's good enough for you. I've told you boys to stay out of here.' And I said, 'Well, you never did tell me anything, because I have never talked to you before.' Then Jack Gregory walked up, and—

"Q. Did Gregory say anything about firing a shot that hit you? A. He didn't say anything.

"Q. He didn't say anything? A. I just said, 'Who are you?' He said, 'You know me,' and then I recognized him, I had met him once before, with Ed Lacy."

Appellee further says that when Smith came up to him, Smith had a rifle and also had a scabbard with a pistol in it on his right side; that he did not see any gun on Gregory, and that the two men then took him to the hospital in Llano.

Appellant Smith denied making the statement attributed to him by appellee, and denied that he had a pistol on him at the time. He said that while he was pursuing appellee he fired three or four shots ·in the air with the 22 rifle, and that he heard the report of a larger gun that he thought was fired by Gregory; that appellee was on the fence when he was hit and that he fell on the Mallot side.

Gregory said that just as appellee was climbing on the fence he heard about three shots, "Mr. Smith was shooting," and that he (Gregory) then shot his pistol "off to the right," and "when I shot he fell off the fence." He said that on his way back to his car he took the shell out of his pistol, threw it away and put in a good shell.

Mrs Maggie Myers, an employee at the hospital, said that while Dr. Ray Shepperd, Dr. Roy Shepperd, Mr. Smith and· Mr. Gregory were present, Dr. Ray Shepperd asked "Who did this?" and that Smith replied "I did." On cross-examination she said the best she could remember Dr. Ray Shepperd asked the question.

Dr. Roy Shepperd said he remembered asking "Who did this?" or something to that effect, that he "Just asked the group that was there, including Jungkind and our

three Game Wardens. Jungkind, I believe it was, said, 'Smith did it.' I said, 'Is that so?' and Smith says, 'Yes,' or words to that effect."

Dr. Ray Shepperd said that while in the hospital he heard appellee and Smith arguing and that he heard Smith say "if that didn't teach him a lesson, that, by God, he would next time, or words to that effect." He further said he did not hear Smith admit he shot appellee..

The Sheriff of Llano County said that after the shooting he went out and talked to Smith and got a gun from him, and said:

"Well, I went early one morning, Mr. Smith was in bed. I went up to his room, and went in, and I said, 'Dean, I want the gun you was using the other evening when the shooting took place,' that's the words I said to him.

"Q. What did he say? A. He said, 'There it is, on the chair.'

"Q. What did he give you? A. .44 pistol."

He further said that Smith did not give him a 22 rifle.

There is no dispute in the evidence, nor in appellant's brief, that Smith at the time was an employee whose duty it was to apprehend persons hunting on the Fitzsimmons land without permission and, at the time appellee was injured, Smith was trying to apprehend him,—he said he called to appellee to throw down his gun and stop and that he fired shots thinking it would stop him, and that he was chasing him trying to "catch" him.

We think the evidence was amply sufficient as against appellant Smith.

The statement made by Smith to appellee immediately after the shooting but denied by Smith, if accepted by the jury as evidently it was, was made in the course of the performance of his duty—the apprehension of appellee, and in connection with it. It was not a voluntary statement made in a casual conversation but was evidence of probative value as against all appellants. Le Sage v. Pryor, 137 Tex. 455,

154 S.W.2d 446; Southern Surety Co. v. Nalle & Co., Tex.Com.App., 242 S.W. 197. Clearly the statement appears to have been made at a time when the shooting of appellee was a controlling influence on the mind of Smith. The statement was res gestae admissible against all appellants. McCormick & Ray, Tex.Law of Evidence, Sec. 508, p. 658.

█ The foregoing statement of Smith and the other facts and circumstances in evidence of probative value sufficient to support the verdict and judgment. Alamo Downs, Inc., v. Briggs, Tex.Civ.App., 106 S.W.2d 733, 735, error dism.

█ This brings us to a consideration of the testimony of Mrs. Myers, the two Dr. Shepperds and the sheriff, supra. This testimony was admissible and had probative value as against appellant Smith. Appellee at the trial conceded it was not admissible as against the other appellants, and at that time the trial court indicated a willingness to limit, at least, a portion of it. No request that the testimony be limited to any person or for any purpose appears to have been made by appellants. If any of the appellants desired to have the testimony limited to Smith, or for any purpose, they should have requested the trial court to so limit it, and having failed to do so they cannot here complain. Blum Milling Co. v. Moore-Seaver Grain Co., Tex.Com.App., 277 S.W. 78; Motley v. Mielsch, Tex.Civ.App., 214 S.W.2d 671; 41 Tex.Jur. p. 881, Sec. 125. Clearly the statements were admissible as against appellant Smith. Edwards v. Osman, 84 Tex. 656, 19 S.W. 868.

The question of whether or not appellant Smith was authorized to apprehend or arrest appellee without a warrant is not briefed and we do not discuss that issue further than to cite Heath v. Boyd, 141 Tex. 569, 175 S.W.2d 214.

Appellants argue that there is no evidence to show that Smith intentionally shot appellee, or that he acted with malice.

█ Generally, intent is to be shown by the result of an act done, words spoken about the act, together with all other facts and circumstances in evidence. It is seldom that it can be shown by direct proof for the reason that it is a state of mind of the person committing the act. All of these matters were before the jury and we think was sufficient to support the findings.

"Malice in law is not personal hate or ill will of one person towards another. It refers to that state of mind which is reckless of law and the legal rights of the citizens in a person's conduct towards that citizen." Southerland, Damages, Sec. 394, quoted with approval in Foley v. Northrup, 47 Tex. Civ.App. 277, 105 S.W. 229, error ref.

It was not necessary that Smith be personally acquainted with appellee nor that he had a personal ill will toward him. It was sufficient if, as the jury found he did, Smith acted intentionally and with the purpose of inflicting injury, then (absent justification) he acted with a conscious indifference to the consequences of his act, and with gross indifference to the rights of appellee.

The trial court gave the jury a definition of malice as a guide. With that definition before them and from the facts and circumstances in evidence, the jury convicted Smith of acting with malice and a judgment against him for exemplary damages was authorized.

If issues other than those discussed by us are presented by appellant's points, they are presented without argument or the citation of authorities and are therefore overruled.

The judgment of the trial court is affirmed.

Affirmed.