**LUBBOCK BAIL BOND et al., Appellants,**

v.

**Bertha JOSHUA et vir, Appellees.**

**No. 7699.**

Court of Civil Appeals of Texas.

Amarillo.

May 1, 1967.

Crenshaw, Dupree & Milam, James H. Milam and Cecil Kuhne, Lubbock, for appellants.

Hurley & Sowder, Lubbock, for appellees.

CHAPMAN, Justice.

This opinion is in lieu of our opinion announced on March 20, 1967.

This is an appeal by Houston Trammel, Jack Trammel, H. C. Trammel and Ethyl Herrige d/b/a Lubbock Bail Bond and Don Hightower, an employee of Lubbock Bail Bond, from a judgment based upon a jury

verdict for Bertha Joshua, et vir., for actual and exemplary damages based on a suit for wrongful assault, false imprisonment and malicious prosecution.

In response to special issues submitted the jury found that Don Hightower made an assault upon Mrs. Bertha Joshua on or about February 17, 1965; that he caused her to be falsely imprisoned; and that $50 would fairly and justly compensate her each for the assault and false imprisonment, a total sum of $100 actual damages. The jury found Hightower did not act with malice nor without probable cause in filing a complaint of assault against Mrs. Joshua, and found $5,000 exemplary or punitive damages against appellants. A judgment upon such verdict was rendered for appellee for the sum of $5,100, from which appeal is perfected upon twenty-six points of alleged error. The first two points assert error in rendering judgment for punitive damages because of lack of any proof of malice on part of appellants; that the undisputed evidence established that Hightower in good faith believed he had the right to take Bertha Joshua into custody by the use of such force as was reasonably necessary, thus punitive damages were not recoverable; that $5,000 is not reasonably proportioned to the actual damages found; and that there is no pleading, proof, or jury finding that Hightower's employers directed or ratified any tortious act by him. Points 3 and 4 raise "no evidence" and great weight and preponderance of the evidence questions to support punitive damages, so we shall attempt to discuss the four points together, though the first two are highly multifarious.

In order to get the contention asserted of lack of pleadings to show malice out of the way, to begin with we have carefully read the pleadings upon which appellees went to trial. We hold they allege malice against all parties both as to the assault and false imprisonment.

It appears to be settled law in Texas that: "'The fact that an act is unlawful is not of itself ground for award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful.'" Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022 (1943); Sears, Roebuck And Company v. Jones, 303 S.W.2d 432 (Tex.Civ.App.-Waco, 1957, writ ref'd n. r. e.); Ware v. Paxton, 359 S.W.2d 897 (Tex.1962).

The definition given in connection with the issue on exemplary or punitive damages does not use the word "malice" but instructs the jury that such damages are in the nature of a penalty "* * * assessed against the defendants by reason of the willful, wanton, or wrongful commissions of an act or acts, which caused the actual damages, * * *." Though the guideline in the cases cited in the preceding paragraph for considering punitive damages and from which we quoted therein use of the word "malicious" it does so in connection with wanton—"* * * must partake of a wanton and malicious nature, * * *." The word "wanton" is defined in Webster's New Collegiate Dictionary. A Merriam-Webster, as *undisciplined; unruly. * * * Marked by arrogant recklessness of justice, of the feelings of others, or the like; * * * willfully malicious.*" In Ware v. Paxton, supra, the Supreme Court of Texas said: "Definitions of malice and the grounds for exemplary damages are necessarily general and do not provide precise limits for the decision of cases. Where the collection methods of a lender cease merely being unreasonable and take on the character of *malicious and wanton conduct* is a matter of degree. To determine whether Ware's actions are of such a nature that it can properly be said that they evidence *maliciousness and wantonness,* we must compare the facts of this case with others *where the conduct of the lender was extreme enough to be considered malicious, wanton, and indicating reckless disregard*

*for the injurious consequences of his acts to others."* (All emphases herein are ours).

Also, in discussing the rules required for recovery of exemplary damages, the same court quoted from a textual statement to the effect that the mental factor involved in showing the conduct of the defendant for which punitive damages are recoverable " * * * is also described in the reports by the terms 'malice,' 'fraud,' *'oppression,' 'recklessness,' and the like."* Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709 (1943). We have found no Texas Supreme Court case holding a judgment is reversible unless it uses the words "malice" or "malicious" in connection with charges on punitive damages. The Court in each instance uses the terms in connection with other terms of similar import such as "wanton."

Mrs. Joshua had previously been filed on in Lubbock for speeding. Because she did not have the money to pay a fine she failed to appear when the case was set, so she was filed on for failure to appear. Lubbock Bail Bond then made her bonds and she was paying for them at the rate of $10 per week. She had made three payments when her husband became ill. She called them and told them she could not make the payment that week but would be in when her husband went back to work. The next time she heard from them was when Don Hightower appeared at her home.

The record here most favorable to the judgment rendered by the trial court shows Hightower came to the home of Mrs. Joshua, knocked on the door, and after asking her to identify herself, said, "Let's go." She told him she was going to bring the money in for the bonds Friday when her husband was paid and Hightower said, "Well, I can't wait." She then told him if he would wait until 4:00 o'clock her oldest daughter would be home so she could stay with the children. Hightower then said, "I will have to take you in, * * * come on and let's go." About that time her stepson and one of his friends came up and Mr. Hightower told them in the presence of an insurance salesman and Mrs. Joshua's children that, "If they didn't live there, they had better get the hell out from there."

When he kept talking rough to her she said, "Anyway, you don't have to talk to me like that." He replied, "I will talk to you any damn way I please." When her stepson spoke up in her behalf, Hightower pulled his handcuffs out of his pocket and told them he was a deputy.

After he went a couple of times out to his car containing a two-way radio and talked to the Lubbock Bail Bond office, he came back and insisted again that she go with him. She told him she would not go with him but would go over where her husband works and get his money, to which he replied, "Do you think I am going to give you a chance to get away?" Even at that time eight of their eleven children were there in the house, the youngest of which was less than two years of age. We believe it quite unlikely that she would have absconded under such conditions when her husband was out of town at the time himself.

When Mrs. Joshua finally got to her car to go to her husband's place of work to ask for the money from his employer to pay Hightower, he used his automobile to block her from leaving in three efforts she made. When she succeeded in getting away he chased her with his lights on and horn blowing and forced her car off the road, blocking her forward movement with his car. She then backed up and he started after her again, chasing her all the way to her husband's place of work. When she parked he pulled his car so close to hers she could not get out on the driver's side. When she got out on the other side she started running and he caught her coat and "snatched me back." At that time he had handcuffs in his hands and tried to put them on her. In the process of tussling with her he fell down and she broke loose and ran into the office of the Hide Company where her husband works. She was crying and hysterical according to the manager of the Hide Company and Hightower followed her in, said

he had a warrant for her arrest and was going to take her back to town. Mr. Goldston, the manager, testified they did not think he had a warrant or the authority to use one, "so we asked him to leave." It developed that he did not have a warrant at that time. This same witness also testified that shortly thereafter three more of the Trammel cars came, one parking on the north side, one on the south side and two in the street.

Hightower denied most of the testimony above related but Mrs. Joshua's testimony of his conduct at her home was corroborated by Ed Joshua, Jr. and his assault upon her near the Hide plant was corroborated by Madison White and Eugene Lindsey, employees of the Hide Company. They testified Hightower caught her, tussled with her and tried to put her in his car.

Complaint was then filed by Hightower against Bertha Joshua for assaulting him by backing her car against him. She was tried by a jury in justice court and found not guilty of the offense.

We hold the testimony of the conduct of Hightower when applied to the above quoted rules laid down by the Supreme Court constitute sufficient evidence to show both actual and exemplary damages for the assault and that the jury's answers to Special Issues One, Two and Seven are not contrary to the great weight and preponderance of the evidence. In so holding, we have examined and considered all the evidence under the rules of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952). Thus, we have necessarily had to hold that the failure to use the words "malice" or "malicious" in the instructions concerning exemplary or punitive damages is not reversible error in view of the instructions by the court that in the discretion of the jury such damages could be awarded against defendants in the nature of a penalty by reason of the willful, wanton, or wrongful commissions of acts which caused the actual damages, if they found such, and found that actual damages were sustained.

In view of the many cases which use the words "malice" or "malicious" in connection with instructions on exemplary damages, it is difficult to understand why a trial court would resort to such brinkmanship in leaving the word out of the instructions on punitive damages and take that chance. However, in view of the use of the term as synonymous with wanton, willful, wrongful, etc. (particularly with the word "wanton"), in view of the Supreme Court's suggestion in Ware v. Paxton, supra, that definitions of malice and the grounds for exemplary damages are necessarily general and do not provide precise limits, and in view of the above dictionary definition of "wanton," we hold the failure to include the words "malice" or "malicious" in the instructions is not fatal.

As far back as 1878 the Supreme Court of Texas has appeared to use "malice" and "wanton" with respect to punitive damages as meaning essentially the same. In Bradshaw v. Buchanan, 50 Tex. 492, the court reversed the case because: "There is no evidence tending to show that appellants were actuated by malice in taking and holding the house and land. * * * *or that they did so wantonly, or with the intent to vex, harass, injure, or oppress him.*" Here the court used "wantonly" and the verbs "vex," "harass," "injure," and "oppress" as alternatives to malice when it used the conjunction "or" following malice and preceding those words.

Even if malice or malicious should have been included in the definition, in view of the other terms used, we hold it is not reversible error under Rule 434, Vernon's Annotated Texas Rules.

We are not unmindful of the statement of the Supreme Court of Texas in Bennett v. Howard, supra, to the effect that, " * * * exemplary damages are recoverable for, and only for, such injuries as result from wrongs accompanied by some aggravating circumstances of malice, fraud, gross negligence, etc." Such language would appear to us to account for the suggestion in Ware v. Paxton, supra, to the effect that definitions of

malice and the grounds for exemplary damages are general and do not provide precise limits for the decision of cases. There were certainly aggravating circumstances present in this case from the time Hightower started cursing at Mrs. Joshua's home until he was asked to leave the Hide plant and in our opinion much of his conduct was of a malicious, willful, reckless, harassing, oppressive and wanton nature. In fact, by the assault on Mrs. Joshua, a female, when he tussled with her he was guilty of aggravated assault under Article 1147(5), Vernon's Annotated Texas Penal Code.

■ The contention that the parties constituting Lubbock Bail Bond could not be held liable for punitive damages is without merit. Hightower was their employee. He was acting under orders from the office to bring Mrs. Joshua in to them. He reported over the two-way radio that she was refusing to come with him and his orders were to bring her in. On 15th Street when he was following her and harassing her with his automobile, he was ordered again to stop her and bring her in. After pursuing her to the Hide plant he radioed the office again and was told to stay there and watch the building until more help arrived from the office, which shortly did arrive and practically surround the Hide Company office with Lubbock Bail Bond automobiles. Additionally, his office had told him he had the right to bring people in whether they wanted to come or not. Under these circumstances we hold the conduct of Hightower was imputed to the parties doing business as Lubbock Bail Bond under one or more of the four conditions set out by the Supreme Court of Texas in King v. McGuff, 149 Tex. 432, 234 S.W. 2d 403 (1950) for awarding punitive damages against a master or other principal because of an act by an agent.

We do not consider Gulf, C. & S. F. R. Co. v. Moore, 69 Tex. 157, 6 S.W. 631 (1887) cited by appellants on lack of ratification in point here for the reason that Hightower was in touch with Lubbock Bail Bond all the time and they were instructing him "to

bring her in." Their rush to the Hide Company with more help and practically surrounding the building indicated further acts of ratification.

We are also unable to agree with appellant's contention to the effect that the evidence shows Hightower was acting in good faith in the " * * * belief that he had the right to do what he was doing" and, therefore, his acts could not be made the basis of punitive damages. He did testify, "That's correct," in answer to a question if he thought he had " * * * a right to go out and bring them into the office whether they wanted to come or not." But we find insufficient probative evidence to the effect that he thought in "bringing them in" he had the right to curse and abuse a female, handcuff her, chase her off the road and assault her, as the evidence favorable to the judgment showed he did and attempted to do, as if she were a dangerous criminal.

We pass now to appellants' points to the effect that there is no evidence and insufficient evidence to support Special Issue No. 3 inquiring of the jury if "Don Hightower caused the plaintiff, Bertha Joshua, to be falsely imprisoned."

Appellants' points, if we understand them, are based upon the theory that the issue was inquiring of the jury with reference to imprisonment in jail upon a warrant duly issued. Their Point 23 is so worded. Considered from that standpoint, we found the points well taken and held with appellants thereon in our first opinion.

■ In their motion for rehearing appellees now say they never at any time contended the imprisonment in jail was "false imprisonment." The question as asked would indicate the contrary but the definition in connection therewith would indicate an inquiry as to false imprisonment by Hightower in his acts of attempting to detain Mrs. Joshua's movements on the way to her husband's employer's place of business. By imprisoning her in that respect, and the evidence is amply sufficient for the jury

to so find, he did so himself rather than causing her to be falsely imprisoned, as the issue is worded. However, in view of the liberal construction suggested to be given to rules of civil procedure under Rule 1, Vernon's Texas Rules Annotated, we shall consider the issue as inquiring of the jury if Don Hightower falsely imprisoned Bertha Joshua by restraining her from moving from one place to another. Under the testimony above related, we hold he did so and the answer of the jury to the issue is not against the great weight and preponderance of the evidence. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

 We hold the jury's answer of $50 actual damages, each for assault and false imprisonment, is supported by the evidence. The record shows Hightower's conduct toward Mrs. Joshua was fraught with such aggravation or oppression and with such willful, wanton, and reckless disregard and invasion of her rights that she was crying even before she left her home. By the time she reached her husband's employer's place of business she was hysterical and it took considerable time to quiet her down. The evidence also shows she is a victim of high blood pressure, so we believe there is evidence sufficient for the jury to have found both physical suffering and mental anguish. Both are elements constituting the right to exemplary or punitive damages. Bisso v. Southworth, 71 Tex. 765, 10 S.W. 523 (1888); Dallas Joint Stock Land Bank of Dallas v. Britton, 114 S.W.2d 907 (Tex.Civ. App.-Waco, 1938, rev'd on other grounds, 134 Tex. 529, 135 S.W.2d 981); Wright v. E-Z Finance Co., 267 S.W.2d 602 (Tex.Civ. App.-Dallas, 1954, writ ref'd n. r. e.).

 Appellants throughout their brief have contended in a myriad number of points and through devious ways that Don Hightower had the right and authority to use whatever force was necessary to take Mrs. Joshua into the office of Lubbock Bail Bond without a warrant of arrest, urging the authority of Taylor v. Taintor, 16 Wall. 366, 83 U.S. 366, 367, 21 L.Ed. 287, 290, an old 1872 case. As many federal statutes as have been passed and as many opinions as the Supreme Court of the United States has written concerning civil rights since 1872, we would entertain grave doubt that the Court would consider Taylor v. Taintor, supra, as the law today. The Supreme Court of Texas in a very able and sound opinion has spelled out in detail the authority one has in this state to apprehend and arrest another and has placed many limitations even upon peace officers in connection therewith. Heath v. Boyd, 141 Tex. 569, 175 S.W.2d 214 (1943). The Court there spelled out in detail how and when an arrest may be made as follows:

"The only circumstances under which one may lawfully be arrested without warrant are: (1) when he commits a felony or a breach of the peace (a) within the presence or view of the officer or other person, Art. 212, C.C.P.1925, or (b) in the presence or view of a magistrate who verbally orders his arrest, Art. 213, ibid.; (2) when his arrest may prevent the consequences of theft, Art. 325, ibid.; (3) when a peace officer is informed by a credible person that a felony offender is about to escape and there is no time to secure a warrant, Art. 215, ibid.; (4) when the accused threatens to take the life of another, within the hearing of a magistrate, the magistrate may arrest him, if the case is one of emergency, Art. 73, ibid.; (5) when he is an escaped prisoner, Art. 244, ibid., which is really a retaking and not an arrest, Ex parte Sherwood, 29 Tex.App. 234, 15 S.W. 812, supra; (6) when the ordinances of a city or town may authorize such action as to persons found in suspicious places or under circumstances reasonably showing that they have been guilty of some felony or breach of the peace or threaten or are about to commit some offense, Art. 214, ibid.; and (7) generally, for any offense when the statute defining the same expressly confers the authority, e. g., highway violations, under Art. 803, P.C.1925; liquor violations, under Art. 666-30, Vernon's Ann.

P.C.; unlawfully carrying arms, under Art. 487, ibid.; rioting, under Art. 98, C.C.P.1925; unlawful assembly, under Art. 101, ibid.; disloyalty, under Art. 156, P.C.1925."

Some of the statutes cited in the quote just made are no longer in existence but the Court in spelling out the conditions then existing under which an arrest might be made certainly did not hold that a bonding company through its officers or employees may make an arrest in the manner urged by appellants herein.

■ We must now consider the question of disproportion of punitive damages to actual damages for assault and for false imprisonment. Our Supreme Court has held that exemplary damages are in the nature of a punishment, are not to be awarded to enrich the injured party, but are intended rather for the public good; that they are intended "as a warning and an example to prevent the defendant and others from the commission of like offenses and wrongs. Punitive in character and awarded for the public good, their proportion or ratio to the amount of actual damages recovered must depend on the state of facts in any given case." Cotton v. Cooper, 209 S.W. 135 (Tex.Comm.App., opinion adopted, 1919).

■ Because the Supreme Court of Texas in the case just cited held excessiveness of a verdict is ordinarily a question of fact, and that the determinations made by Courts of Civil Appeals are final, we have given very careful consideration to a proper proportion of exemplary damages to the actual damages awarded. In the case just cited the jury awarded $700 actual damages and $5,000 exemplary damages, a proportion of 14 to 1. We believe the aggravations and oppressions in the present case were as great or greater than they were in Cotton v. Cooper, supra, so we shall follow the specific proportion adopted in that case. Applying this ratio of 14 to 1, appellee would be entitled to $1,400 exemplary damages, making a total of $1,500.

The court below having rendered a judgment for $5,000 exemplary damages, we are of the opinion that the award is excessive by the sum of $3,500. Therefore, under Rule 440, V.A.T.R., this court must reverse and remand this case unless appellees file a remittitur of $3,500 within ten days from the date of this opinion. In the event such remittitur is filed within that time, the judgment of the trial court will be affirmed, as reformed.